## LOUISVILLE, NEW ALBANY & CHICAGO RAILWAY COMPANY, Petitioner, v. LOUISVILLE TRUST COMPANY.

## SAME v. LOUISVILLE BANKING COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Nos. 29, 30. Argued May 4, 5, 1898. — Decided May 15, 1899.

The Circuit Court of the United States for the District of Kentucky has jurisdiction of a suit brought by a corporation, originally created by the State of Indiana, against citizens of Kentucky and of Illinois, even if the plaintiff was afterwards and before the suit made a corporation of Kentucky also, and pending the suit became a corporation of both Indiana and Illinois by reason of consolidation with a corporation of Illinois; but the court cannot, in such a suit, adjudicate upon the rights and liabilities, if any, of the plaintiff as a corporation of Kentucky, or as a corporation of Illinois.

A court of equity has jurisdiction of a bill by a corporation praying that its guaranty on a great number of negotiable bonds may be cancelled, and suits upon it restrained, because of facts not appearing on its face.

Under a statute authorizing the board of directors of a railroad corporation, upon the petition of a majority of its stockholders, to direct the execution by the corporation of a guaranty of negotiable bonds of another corporation, a negotiable guaranty executed by order of the directors, and signed by the president and secretary and under the seal of the first corporation, upon each of such bonds, without the authority or assent of the majority of its stockholders, is void as to a purchaser of such bonds with notice of the want of such authority or assent; but is valid as to a purchaser in good faith and without such notice.

THIS was a bill in equity, filed April 9, 1890, in the Circuit Court of the United States for the District of Kentucky, by the Louisville, New Albany and Chicago Railway Company, (hereafter called the New Albany Company,) described as "a corporation duly organized and existing under the laws of the State of Indiana," against the Ohio Valley Improvement and Contract Company, (hereafter called the construction company,) the Richmond, Nicholasville, Irvine and Beattyville Railway Company, (hereafter called the Beattyville Com-

pany,) and the Louisville Trust Company, all corporations of
the State of Kentucky, and other citizens of Kentucky, of New
York and of Illinois, for the cancellation of a contract between
the New Albany Company and the construction company, and
of a guaranty indorsed by the New Albany Company, in ac-
cordance with that contract, upon bonds issued by the Beatty-
ville Company, and held by the other defendants, and for an
injunction against suits thereon. The Louisville Banking
Company, a corporation of Kentucky, and other bondholders
were afterwards made defendants by a supplemental bill.

The bill alleged that the guaranty was fraudulently placed
on the bonds of the Beattyville Company by a minority of
the plaintiff's directors, who, as individuals, had secured the
option to buy the bonds at a low price; and also averred that
the guaranty was void, for want of the presence of a quorum
of the directors at the meeting which directed it to be exe-
cuted, as well as for want of a previous petition in writing by
a majority of the stockholders, pursuant to a statute of Indiana.

Pleas to the jurisdiction, asserting that the plaintiff was a
corporation and a citizen of Kentucky, as well as demurrers
to the bill for want of equity were overruled by the court.
69 Fed. Rep. 431, 432; 57 Fed. Rep. 42.

The case was afterwards heard upon pleadings and proofs,
and, so far as is material to be stated, appeared to be as
follows:

The New Albany Company, by articles of incorporation,
filed with the secretary of state of Indiana in January, 1873,
reciting its purchase at a judicial sale at New Albany of
the railroad and franchise, and all the property, real and per-
sonal, of another railroad company whose line of railroad ran
from New Albany to Michigan City in the State of Indiana,
and expressed to be made " for the purpose of carrying out
the design of the said purchase, and forming a corporation of
Indiana," became a corporation, under the statute of Indiana
of March 3, 1865, which contained these provisions :

" The said corporation shall have capacity to hold, enjoy
and exercise, within other States, the aforesaid faculties,
powers, rights, franchises and immunities, and such others as

may be conferred upon it by any law of this State, or of any other State in which any portion of its railroad may be situate, or in which it may transact any part of its business; and to hold meetings of stockholders and of its board of directors, and to do all corporate acts and things, without this State, as validly and to the same extent as it may do the same within the State, on the line of such road." Indiana Stat. 1865, c. 20, § 5, p. 68; Rev. Stat. § 3949.

"Any railroad company incorporated under the provisions of this act shall have the power and authority to acquire, by purchase or contract, the road, roadbed, real and personal property, rights and franchises, of any other railroad corporation or corporations which may cross or intersect the line of such railroad company, or any part of the same, or the use and enjoyment thereof, in whole or in part; and may also purchase or contract for the use and enjoyment, in whole or in part, of any railroad or railroads lying within adjoining States; and may assume such of the debts and liabilities of such corporations as may be deemed proper." "Any railroad company incorporated under the provisions of this act shall also have power to consolidate with other railroad corporations in the continuous line, either within or without this State, upon such terms as may be agreed upon by the corporations owning the same." Indiana Stat. 1865, c. 20, § 7, p. 68; Rev. Stat. § 3951.

On April 8, 1880, the legislature of Kentucky passed a statute, entitled "An act to incorporate the New Albany and Chicago Railway Company," which took effect upon its passage, and the first two sections of which were as follows: ·

"SEC. 1. The Louisville, New Albany and Chicago Railway Company, a corporation organized under the laws of the State of Indiana, is hereby constituted a corporation, with power to sue and be sued, contract and be contracted with, to have and use a common seal, with the power incident to corporations, and authority to operate a railroad.

"SEC. 2. The Louisville, New Albany and Chicago Railway Company is hereby authorized to purchase or lease, for depot purposes in the city of Louisville or county of Jefferson, such

real estate as may be deemed by it to be necessary for passenger and freight depots and transfer, machine shops, and for all switches or turnouts necessary to reach the same ; and is also authorized to connect with any railroad or bridge now operated or used, or which may be hereafter operated or used, in said county of Jefferson, and may build any such connecting lines, or lease or operate the same; and for all said purposes shall have the right to condemn all property required for the carrying out of the objects herein named; and may bond the same, and secure the payment of any such bonds by a mortgage of its property, rights and franchises."

The third section of that statute directed how proceedings for the condemnation of such real estate should be conducted in the courts of the State of Kentucky.   Kentucky Stat. sess. 1879, c. 858, p. 233.

On May 5, 1881, the New Albany Company, (describing itself as " a corporation existing under the laws of the State of Indiana," and as owning and operating a line of railroad from New Albany to Michigan City in the same State,) and the Chicago and Indianapolis Air Line Railway Company, (describing itself as " a consolidated corporation organized and existing under the laws of the States of Indiana and Illinois," and as having in process of construction a line of railway extending from Indianapolis in Indiana to a connection with a railroad at or near Glenwood in Illinois so as to secure a connection with Chicago in that State,) consolidated their stock and property, under the laws of Indiana and of Illinois, " so as to create and form a consolidated corporation, to be called and known as the Louisville, New Albany and Chicago Railway Company," by articles of consolidation, the third of which provided, in accordance with the statutes of Indiana, that " the said consolidated corporation hereby created shall be vested with all the rights, privileges, immunities and franchises which usually pertain to railroad corporations under the laws of the respective States of Illinois and Indiana, wherein the lines of its railroad are situate, and shall also be vested with all and singular the rights, powers, privileges, immunities, capacities and franchises which before the execution

of these articles were lawfully possessed or exercised by either of the parties hereto ; " and the ninth of which provided that " the principal place of business and the general office of the consolidated corporation shall be established in the city of Louisville, Kentucky."

On April 7, 1882, the legislature of Kentucky, by a statute entitled " An act to amend an act entitled 'An act to incorporate the Louisville, New Albany and Chicago Railway,' approved April 8, 1880," enacted that " the Louisville, New Albany and Chicago Railway Company is hereby authorized and empowered to indorse or guarantee the principal and interest of the bonds of any railway company now constructed, or to be hereafter constructed, within the limits of the State of Kentucky ; and may consolidate its rights, franchises and privileges with any railway company authorized to construct a railroad from the city of Louisville to any point on the Virginia line ; such indorsement, guarantee or consolidation to be made upon such terms and conditions as may be agreed upon between said companies; or it may lease and operate any railway chartered under the laws of the State of Kentucky : Provided, it shall not lease or consolidate with any two lines of railway parallel to each other." Kentucky Stat. sess. 1881, c. 870, p. 251.

The New Albany Company was not shown to have formally accepted the statutes of Kentucky of 1880 and 1882, or to have ever organized as a corporation under those statutes. But the defendants, as evidence that it had accepted a charter of incorporation from the State of Kentucky, relied on the following documents :

1st. Two deeds to it of lands in Jefferson County, made and recorded in 1881, in which it was described as " of the city of Louisville, Kentucky."

2d. Two mortgages executed by it to trustees in 1884 and 1886, including its railway in Indiana and in Jefferson County, in each of which it was described as " a corporation duly created and existing under the laws of Indiana and Kentucky."

3d. A lease to it from the Louisville Southern Railway

Company, in 1888, (more fully stated below,) in which it was similarly described.

4th. A petition (the date of which did not appear in the transcript) that an action brought against it in a court of the State of Indiana might be removed into the Circuit Court of the United States, upon the ground that it was a corporation of Kentucky.

5th. Proceedings in 1887, in a court of Jefferson County, for the condemnation of lands in that county upon a petition in which "the Louisville, New Albany and Chicago Railway Company states that it is a corporation, and that it is duly empowered by its charter by an act of the general assembly of the Commonwealth of Kentucky to purchase, lease or condemn in said State such real estate as may be necessary for railway, switches, side tracks, depots, yards and other railway purposes, and to construct and operate a railroad in said State."

On March 8, 1883, the legislature of Indiana passed a statute, entitled "An act to authorize railroad companies organized under the laws of the State of Indiana to indorse and guarantee the bonds of any railroad company organized under the laws of any adjoining State," the material provisions of which were as follows:

"SEC. 1. The board of directors of any railway company organized under and pursuant to the laws of the State of Indiana, whose line of railway extends across the State in either direction, may, upon the petition of the holders of a majority of the stock of such railway company, direct the execution by such railway company of an indorsement guaranteeing the payment of the principal and interest of the bonds of any railway company organized under or pursuant to the laws of any adjoining State, the construction of whose line or lines of railway would be beneficial to the business or traffic of the railway so indorsing or guaranteeing such bonds.

"SEC. 2. The petition of the stockholders, specified in the preceding section of this act, shall state the facts relied on to show the benefits accruing to the company indorsing or guaranteeing the bonds above mentioned.

" Sec. 3. No railway company shall, under the provisions of this act, indorse or guarantee the bonds of any such railway company or companies, as is above mentioned, to an amount exceeding one half of the par value of the stock of the railway company so indorsing or guaranteeing as authorized under this act." Indiana Stat. 1883, c. 127, p. 182; Rev. Stat. §§ 3951a–3951c.

On December 10, 1888, the New Albany Company took a lease, in which it was described as " a corporation organized and existing under the laws of the State of Indiana and of the State of Kentucky," from the Louisville Southern Railroad Company, a corporation of Kentucky, of the railroad of the latter, running from Louisville to Burgin through sundry other places in Kentucky, and connecting at Versailles in that State with a railroad then being constructed by the Beattyville Company to Beattyville, and which would, if completed, extend the connections of the New Albany Company a considerable distance towards the Virginia line.

The Beattyville Company had, on October 11, 1888, made a contract with the Ohio Valley Improvement and Contract Company, by which that company agreed to construct and equip its line of railroad; and, in consideration thereof, the Beattyville Company agreed to execute and issue to the construction company its first mortgage bonds for $25,000 a mile, dated July 1, 1889, and payable in thirty years, with interest at the annual rate of six per cent; and to transfer to that company the subscriptions received from municipalities, and to issue to that company all its capital stock, except what would have to be issued on account of such subscriptions.

On October 8, 1889, the board of directors of the New Albany Company, as appeared by its records, passed a resolution ordering the president and secretary to execute, under the seal of the company, a contract with the construction company, which contract described that company as a corporation of the State of Kentucky, and the New Albany Company as " a corporation organized and existing under the laws of the States of Indiana and Kentucky," and contained these stipulations :

" Fourth. The said New Albany Company agrees to and

with the said construction company that it will, from time to time, as the said first mortgage bonds are earned by and delivered to the said construction company pursuant to the terms of their said construction contract, guarantee the payment by the said Beattyville Company of the principal and interest of the said bonds in manner and form following, that is to say, by indorsing upon each of said bonds a contract of guaranty as follows:

" 'For value received, the Louisville, New Albany and Chicago Railway Company hereby guarantees to the holder of the within bond the payment, by the obligor thereon, of the principal and interest thereof in accordance with the tenor thereof.

" 'In witness whereof the said railway company has caused its corporate name to be signed hereto by its president and its seal to be attached by its secretary.' "

"Sixth. In consideration of the premises, the said construction company agrees to transfer and deliver to the said New Albany Company three fourths of the entire capital stock of the said Beattyville Company, the said delivery to proceed *pari passu* with the guaranteeing of the said bonds by the said New Albany Company: $3000 at par of the said stock being delivered for each $4000 of bonds guaranteed."

This contract was dated October 9, 1889; was signed in the name of each company by its president and secretary and under its corporate seal; and a copy of it was spread upon the records of the board of directors of the New Albany Company.

The charges of fraud against the directors who took part in that meeting were disproved; and the evidence failed to establish that the meeting was not in every respect a lawful one.

But no petition of a majority of the stockholders for the execution of the guaranty was presented, as required by the statute of Indiana of 1883, above cited. Nor was there any evidence that the stockholders ever authorized or ratified the contract between the New Albany Company and the construction company, or the guaranty executed in accordance therewith.

Pursuant to that contract, and before March 12, 1890, the

stock of the Beattyville Company was delivered to the New Albany Company; a guaranty, in the terms specified in the fourth article of that contract, and bearing the signature of the New Albany Company by its president and secretary and its corporate seal, was placed on 1185 bonds for $1000 each of the Beattyville Company; and the bonds thus guaranteed were put on the market by the construction company.

On March 12, 1890, the annual meeting of the stockholders of the New Albany Company was held, a new board of directors was elected, and the meeting was adjourned to March 22, 1890, when it was voted by a majority of the stockholders to reject and disapprove the contract with the construction company, and the guaranty placed on the bonds of the Beattyville Company, as having been made without legal authority or the approval of the stockholders, and to empower the board of directors to take all proceedings necessary or proper to cancel such contract and guaranty, and to relieve the company from any obligation or liability by reason thereof.

Many of the bonds so guaranteed and put on the market, including one hundred and twenty-five bonds purchased by the Louisville Trust Company, and ten bonds purchased by the Louisville Banking Company, were taken from the construction company by the purchasers in good faith, and without notice or knowledge that there had been no petition of a majority of the stockholders for the execution of the guaranty; and forty-five of the bonds were purchased from the construction company by the Louisville Banking Company after the meeting in March, 1890, and with notice that the majority of the stockholders had not petitioned for, but had disapproved, the guaranty.

The Beattyville Company and the construction company went on with the work of constructing the Beattyville railroad until the summer of 1890, when they both became insolvent, and their property passed into the hands of receivers.

The plaintiff, in its bill, tendered back the stock which it had received, and the stock was deposited in the office of the clerk of the court.

The Circuit Court entered a decree for the plaintiff against

all the defendants. 69 Fed. Rep. 431. The Louisville Trust Company and the Louisville Banking Company and other bondholders appealed to the Circuit Court of Appeals, which reversed the decree of the Circuit Court, and ordered the bill to be dismissed as to the Louisville Trust Company and the Louisville Banking Company, except as to the forty-five bonds held by the latter company; and, as to these bonds, ·ordered an injunction against suits on the guaranty against the plaintiff as a corporation of Indiana and Illinois, and that there be stamped on each of these forty-five bonds, under its guaranty, these words: " This guaranty is binding only on the Louisville, New Albany and Chicago Railway Company, a corporation of Kentucky. It is not binding on the Louisville, New Albany and Chicago Railway Company, a corporation of Indiana and Illinois." 43 U. S. App. 550. The plaintiff applied for and obtained these writs of certiorari. 164 U. S. 707.

Mr. E. C. Field and Mr. G. W. Kretzinger for petitioner. Mr. James S. Pirtle was on their brief.

Mr. St. John Boyle and Mr. Swagar Sherley for the Louisville Trust Company and the Louisville Banking Company.

Mr. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The plaintiff, the Louisville, New Albany and Chicago Railway Company, undoubtedly became a corporation of the State of Indiana in 1873 by its incorporation according to the general statute of 1865 of that State.

Whether it afterwards became a corporation of the State of Kentucky also was strongly contested at the bar, and depends upon the legal effect of the statute of Kentucky of 1880.

That statute (being the first statute of Kentucky affecting this corporation) is described indeed in its title, as well as in the title of the statute of 1882 amending it, as " An act to incorporate " this company, although in the title of the first

statute the word "Louisville" in its name is omitted. By the first words of the enacting part of the statute of 1880, it is "the Louisville, New Albany and Chicago Railway Company, a corporation organized under the laws of the State of Indiana," and not any other corporation, or any association of natural persons, that is "hereby constituted a corporation," with the usual powers of corporations, and with "authority to operate a railroad." And it is the corporation so described that, by the other provisions of that statute, may purchase, lease or condemn real estate required for railroad purposes in the county of Jefferson, and may connect with any other railroad in that county, or build, lease or operate any such connecting line, "and may bond the same, and secure the payment of any such bonds by a mortgage of its property, rights and franchises;" and, by the amendatory statute of 1882, may guarantee the bonds of, or consolidate with, other corporations authorized to construct railroads in Kentucky.

This court has often recognized that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and acts within its territorial jurisdiction. *Ohio & Mississippi Railroad Company* v. *Wheeler*, 1 Black, 286, 297; *Railroad Co.* v. *Harris*, 12 Wallace, 65, 82; *Railway Co.* v. *Whitton*, 13 Wall. 270, 283; *Railroad Co.* v. *Vance*, 96 U. S. 450, 457; *Memphis & Charleston Railroad* v. *Alabama*, 107 U. S. 581; *Clark* v. *Barnard*, 108 U. S. 436, 451, 452; *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S. 307, 334; *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161, 169; *Martin* v. *Baltimore & Ohio Railroad*, 151 U. S. 673, 677. But this court has repeatedly said that, in order to make a corporation, already in existence under the laws of one State, a corporation of another State, "the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this." *Pennsylvania Railroad* v. *St. Louis, Alton & Terre Haute*

*Railroad,* 118 U. S. 290, 296 ; *Goodlett* v. *Louisville & Nash-ville Railroad,* 122 U. S. 391, 405, 408; *St. Louis & San Francisco Railway* v. *James,* 161 U. S. 545, 561.

The acts done by the Louisville, New Albany and Chicago Railway Company, under the statutes of Kentucky, while affording ample evidence that it had accepted the grants thereby made, can hardly affect the question whether the terms of those statutes were sufficient to make the company a corporation of Kentucky.

But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this court to be required for the disposition of this case, either as to the jurisdiction, or as to the merits.

As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was and remained, for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or other citizen of either State, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States. *Ohio & Mississippi Railroad* v. *Wheeler,* 1 Black, 286 ; *St. Louis & San Francisco Railway* v. *James,* 161 U. S. 545 ; *St. Joseph Railroad* v. *Steele,* 167 U. S. 659, 663 ; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100, 106.

In *St. Louis & San Francisco Railway* v. *James,* the company was organized and incorporated under the laws of the State of Missouri in 1873, and owned a railroad extending from Monett in that State to the boundary line between it and the State of Arkansas. The constitution of the State of Arkansas provided that foreign corporations might be authorized to do business in this State under such limitations and restrictions as might be prescribed by law, but should not have power to appropriate or condemn private property. The legislature of Arkansas, by a statute of 1881, provided that any railroad company incorporated by or under the laws of any other State, and having a line of railroad to the boundary

of Arkansas, might, for the purpose of continuing its line of railroad into this State, purchase the property, rights and franchises of any railroad company organized under the laws of this State, and thereby acquire the right of eminent domain possessed by that company, and hold, construct, own and operate the railroad so purchased as fully as that company might have done; and that "said foreign railroad company" should be subject to all the provisions of all statutes relating to railroad corporations, including the service of process, and should keep an office in the State. Pursuant to that statute, the St. Louis and San Francisco Railway Company, in 1882, purchased from railroad corporations of Arkansas their railroads, franchises and property, including a railroad connecting at the boundary line with its own railroad, and extending to Fort Smith in Arkansas, and thenceforth owned and operated a continuous line of railroad from Monett in Missouri to Fort Smith in Arkansas. In 1889 the legislature of Arkansas passed another statute, providing that every railroad corporation of any other State, which had purchased a railroad in this State, should, within sixty days from the passage of this act, file a copy of its articles of incorporation or charter with the secretary of state of Arkansas, and should "thereupon become a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding." And the St. Louis and San Francisco Railway Company forthwith filed with the secretary of state of Arkansas a copy of its articles of incorporation under the laws of Missouri, as required by this statute.

In an action brought by a citizen of Missouri against that company in the Circuit Court of the United States for the Western District of Arkansas, to recover for its negligence on that part of its road within the State of Missouri, the company pleaded to the jurisdiction that it was a citizen of Missouri; and the question was certified to this court whether the company, by filing a copy of its articles of incorporation under the laws of Missouri with the secretary of state of Arkansas, and continuing to operate its railroad through that State, became a corporation and citizen of the State of Arkansas.

This court, speaking by Mr. Justice Shiras, upon a careful review of the earlier cases, answered that question in the negative.

The fundamental proposition deduced from the previous decisions was thus stated: "There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit Court of the United States, is composed of citizens of the State which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the Federal courts in 'controversies between citizens of different States.'"

The court frankly recognized that "it is competent for a railroad corporation organized under the laws of one State, when authorized so to do by the consent of the State which created it, to accept authority from another State to extend its railroad into such State, and to receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second State;" and that "such corporations may be treated by each of the States whose legislative grants they accept as domestic corporations." 161 U. S. 562.

But the court went on to say: "The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation." And after referring to the provisions of the statutes of Arkansas of 1881 and 1889, the court added, "But whatever may be the effect of such legislation, in the way of subjecting foreign railroad companies to control and regulation by the local laws of Arkansas, we cannot concede that it availed to create an Arkansas corporation out of a foreign corporation, in such a sense as to make it a citizen of Arkansas, within the meaning of the Federal Constitution, so as to subject it as such to a suit by a citizen of the State of its origin. In order to bring such an artificial body as a corporation within the spirit and letter of that Constitution, as construed by the decisions of this court, it would be necessary to create

it out of natural persons, whose citizenship of the State creating it could be imputed to the corporation itself." 161 U. S. 562, 565.

In that case, the constitution of Arkansas denied to foreign corporations the right of eminent domain; and the Missouri corporation acquired that right, and owned and operated a railroad in Arkansas, in virtue of statutes authorizing it to purchase the property, rights and franchises of Arkansas corporations, and requiring it to file a copy of its articles of incorporation or charter with the secretary of state of Arkansas, and enacting that it should "thereupon become a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding." Yet it was held that it was not thereby made a corporation of Arkansas, in the sense of the provisions of the Constitution, and of the acts of Congress, conferring jurisdiction on the courts of the United States by reason of diverse citizenship.

The statutes of Arkansas in that case went quite as far, to say the least, towards constituting a corporation of another State a corporation of the State enacting those statutes, as the statutes of Kentucky did in the case at bar.

The consolidation of the Louisville, New Albany and Chicago Railway Company, under the same name, with a railroad company of Illinois in 1881, clearly does not affect the question of jurisdiction. That consolidation appears, by cases cited at the bar, to have been in accordance with the law of Indiana, but not to have been authorized by the law of Illinois. *Louisville, New Albany & Chicago Railway* v. *Boney*, 117 Indiana, 501; *American Trust Co.* v. *Minnesota & Northwestern Railroad*, 157 Illinois, 641. It may have been ratified by very recent legislation in Illinois. Illinois Stat. June 9, 1897; Laws of 1897, p. 281; *McAuley* v. *Columbus, Chicago & Indiana Railway*, 83 Illinois, 348, 352. But jurisdiction of a suit, once acquired by a court of the United States by reason of the requisite citizenship, is not lost by a change in the citizenship of either party pending the suit. *Morgan* v. *Morgan*, 2 Wheat. 290; *Clarke* v. *Mathewson*, 12 Pet. 164; *Koenigsberger* v. *Richmond Co.*, 158 U. S. 41, 49.

The demurrers to the bill for want of equity were rightly overruled, and were not insisted on in this court. The object of the bill was that the guaranty upon a great number of negotiable bonds, which might otherwise pass into the hands of *bona fide* purchasers, might be cancelled, and suits upon the guaranty restrained, because of facts not appearing upon its face. The relief sought could only be had in a court of equity. *Peirsoll* v. *Elliott*, 6 Pet. 95, 98; *Grand Chute* v. *Winegar*, 15 Wall. 373, 376; *Robb* v. *Vos*, 155 U. S. 13; *Springport* v. *Teutonia Savings Bank*, 75 N. Y. 397; *Fuller* v. *Percival*, 126 Mass. 381.

We are then brought to the question of the validity of the guaranty by the Louisville, New Albany and Chicago Railway Company of the bonds of the Beattyville Company, as between the parties before us, and under the circumstances shown by this record.

A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guarantee the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly *ultra vires*, unlawful and void, and incapable of being made good by ratification or estoppel. *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, and 171 U. S. 138; *Jacksonville &c. Railway* v. *Hooper*, 160 U. S. 514, 524; *Union Pacific Railway* v. *Chicago, Rock Island & Pacific Railway*, 163 U. S. 564, 581; *California Bank* v. *Kennedy*, 167 U. S. 362, 367, 368; *Davis* v. *Old Colony Railroad*, 131 Mass. 581; *Humboldt Co.* v. *Variety Co.*, 22 U. S. App. 334.

The real question in the case is whether this guaranty was valid under the laws of Indiana, the State by which the guarantor was originally created a corporation, and as a corporation of which it brought this suit.

Some reliance was placed upon the statute of Indiana of 1865, authorizing any railroad company incorporated under its provisions, (as the New Albany Company was,) to consolidate with any railroad corporation having a connecting line, either within or without the State, or to acquire, by purchase or

contract, its property, rights and franchises, or the use and enjoyment thereof, in whole or in part, and to "assume such of the debts. and liabilities of such corporations as may be deemed proper." It was argued that the powers thus given embraced the contract by which the New Albany Company agreed with the construction company, in consideration of receiving from it a controlling interest in the stock of the Beattyville Company, to guarantee the bonds of that company.

But the New Albany Company never consolidated itself with the Beattyville Company, or acquired by purchase or contract its property, rights and franchises, or the use or enjoyment thereof, in whole or in part. It is doubtful, to say the least, whether a mere purchase of three fourths of its stock could authorize an assumption of its debts, under the statute of 1865, if that statute had remained in full force. In *Hill* v. *Nisbet*, 100 Indiana, 341, cited at the bar, a purchase of the stock of one railroad company by another was upheld, not as equivalent to a purchase of the property and franchises, but as a reasonable means to the accomplishment of the consolidation of the two companies.

But we cannot doubt that, as was held by both courts below, the statute of Indiana of 1883 superseded and repealed, as to matters within its scope and terms, the provisions of all former statutes of the State on the subject.

The statute of Indiana of 1883 is entitled "An act to authorize railroad corporations organized under the laws of the State of Indiana to indorse and guarantee the bonds of any railroad company organized under the laws of any adjoining State;" and enacts, in section 1, that "the board of directors of any railway company organized under and pursuant to the laws of the State of Indiana, whose line of railway extends across the State in either direction, may, upon the petition of the holders of a majority of the stock of such railway company, direct the execution by such railway company of an indorsement guaranteeing the payment of the principal and interest of the bonds of any railway company organized under or pursuant to the laws of any adjoining State, the construction of whose line or lines of railway would be bene-

ficial to the business or traffic of the railway so indorsing or guaranteeing such bonds." Section 2 provides that such petition of the stockholders shall state the facts relied on to show the benefits accruing to "the company indorsing or guaranteeing the bonds." And section 3 provides that "no railway company shall, under the provisions of this act," indorse or guarantee such bonds to an amount exceeding half the par value of the stock of "the railway company so indorsing or guaranteeing."

The Louisville, New Albany and Chicago Railway Company was a railway company organized under and pursuant to the laws of Indiana, and its line of railway extended across the State from south to north. On October 8, 1889, the board of directors, at a regular meeting, passed a resolution, entered upon its records, authorizing the president and secretary to execute under seal of the company a contract by which the company agreed with a corporation which was constructing the railroad of the Beattyville Company, a railroad corporation of Kentucky, to guarantee the payment by the Beattyville Company of the principal and interest of bonds of that company, by indorsing on each bond a guaranty, executed in like manner, by which "for value received, the Louisville, New Albany and Chicago Railway Company hereby guarantees to the holder of the within bond the payment, by the obligor thereon, of the principal and interest thereof in accordance with the tenor thereof." The contract, as well as the guaranty on many of the bonds, was accordingly executed by the president and secretary and under the seal of the company, and the contract was spread upon the records of the board of directors. No petition of a majority of the stockholders for the execution of the guaranty was ever presented, as required by the statute; there was no evidence that the stockholders ever authorized or ratified the contract or the guaranty; and, at the next annual meeting of the stockholders, in March, 1890, it was voted to reject and disapprove both the contract and the guaranty, as having been made without legal authority or the approval of the stockholders.

Before that meeting was held, one hundred and twenty-five

of the bonds thus guaranteed had been sold by the construction company to the Louisville Trust Company, and ten bonds to the Louisville Banking Company, each of which companies took those bonds in good faith and without notice that no petition had been presented by a majority of the stockholders for the execution of the guaranty.

Forty-five more of the bonds were purchased by the Louisville Banking Company from the construction company after that meeting, and with notice that a majority of the stockholders had never petitioned for, but had disapproved, the execution of the guaranty. The Louisville Banking Company, thus having notice, when it took these forty-five bonds, that the prerequisite to the execution of the guaranty, under the statute of Indiana of 1883, had not been complied with, was not a *bona fide* holder of these bonds, and should not be allowed to enforce the guaranty thereon against the plaintiff.

The controverted question is whether the bonds which the Louisville Trust Company and the Louisville Banking Company, respectively, purchased in good faith, and without notice of the want of the assent of the majority of the stockholders, are valid in the hands of these companies.

The guaranty by the Louisville, New Albany and Chicago Railway Company of the bonds of the Beattyville Company was not *ultra vires*, in the sense of being outside the corporate powers of the former company; for the statute of 1883 expressly authorized such a company to execute such a guaranty, and its board of directors to direct its execution by the company. The statute, indeed, made it a prerequisite, to the action of the board of directors, that it should be upon the petition of a majority of the stockholders; but this was only a regulation of the mode and the agencies by which the corporation should exercise the power granted to it.

The distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by law, on the one side, and an irregularity in the exercise of the granted powers, on the other, is well established, and has been constantly recognized by this court.

It was clearly indicated in two of its earliest judgments on

the subject of *ultra vires*, both of which were delivered by Mr. Justice Campbell.

In *Pearce* v. *Madison & Indianapolis Railroad*, 21 How. 441, two railroad corporations of Indiana were held not to have the power to purchase a steamboat to be employed on the Ohio River, to run in connection with their railroads, because this "diverted their capital from the objects contemplated by their charters, and exposed it to perils for which they afforded no sanction;" "persons dealing with the managers of a corporation must take notice of the limitations imposed upon their authority by the act of incorporation;" "the public have an interest that neither the managers nor stockholders of the corporation shall transcend their authority;" and the contract in question "was a departure from the business" of the railroad corporations, and "their officers exceeded their authority." 21 How. 443, 445.

In *Zabriskie* v. *Cleveland, Columbus & Cincinnati Railroad*, 23 How. 381, the statutes of Ohio empowered railroad corporations, "by means of their subscription to the capital stock of any other company, or otherwise," to aid it in the construction of its road, for the purpose of forming a connection between the two lines, provided that no such aid should be furnished until two thirds of the stockholders represented and voting, at a meeting called by the directors, should have assented thereto. The directors of three railroad corporations made a contract with another railroad corporation to guarantee its bonds, as part of an arrangement for connecting the four roads; and the bonds were accordingly guaranteed, and were issued to *bona fide* holders, without any meeting of the stockholders having been called. But, upon evidence that the stockholders had subsequently assented to the transaction, the bonds were held to be valid; and the court expressly declared that the doctrine that a corporation cannot vary from the object of its creation, and that persons dealing with a company must take notice of whatever is contained in the law of its organization, does not apply to "those cases in which a corporation acts within the range of its general authority, but fails to comply with some formality or regula-

tion which it should not have neglected, but which it has chosen to disregard." 23 How. 398.

Again, in *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, this court, in summing up the result of previous decisions, stated the same distinction as follows: "A contract of a corporation, which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void and of no legal effect; the objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it; the contract cannot be ratified by either party, because it could not have been authorized by either; no performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by those laws." 139 U. S. 59.

In *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393, one of the parties relied on a provision of a statute of Illinois that it should not be lawful for any railroad company of Illinois, or its directors, to consolidate its road with any railroad out of the State, to lease its road to any railroad company out of the State, or to lease any railroad out of the State, "without having first obtained the written consent of all of the stockholders of said roads residing in the State of Illinois, and any contract for such consolidation or lease which may be made without having first obtained said written consent, signed by the resident stockholders in Illinois, shall be null and void."

Of that statute, this court said : " It did not limit the scope of the powers conferred upon the corporation by law, an excess of which could not be ratified or be made good by estoppel; but only prescribed regulations as to the manner of exercising corporate powers, compliance with which the stockholders might waive, or the corporation might be estopped, by lapse of time, or otherwise, to deny." 145 U. S. 403.

A corporation, though legally considered a person, must perform its corporate duties through natural persons, and is impersonated in and represented by its principal officers, the president and directors, who are not merely its agents, but are, generally speaking, the representatives of the corporation in its dealings with others. Shaw, C. J., in *Burrill* v. *Nahant Bank*, 2 Met. 163, 166, 167; Comstock, J., in *Hoyt* v. *Thompson*, 19 N. Y. 207, 216. And the appropriate form of verifying any written obligation to be the act of the corporation is by affixing the signatures of the president and secretary and the corporate seal.

The bonds of the Beattyville Company were instruments negotiable by delivery ; and the guaranty indorsed upon each of them by the Louisville, New Albany and Chicago Railway Company was signed by the president and secretary and under its corporate seal, and was in terms payable to the holder thereof and itself negotiable.

One who takes from a railroad or business corporation, in good faith, and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or of both, have authorized the execution and issue of the obligation.

In *Merchants' Bank* v. *State Bank*, 10 Wall. 604, this court stated, as an axiomatic principle in the law of corporations, this proposition : " Where a party deals with a corporation in good faith — the transaction is not *ultra vires* — and he is unaware of any defect of authority or other irregularity on the

part of those acting for the corporation, and there is nothing
to excite suspicion of such defect or irregularity, the corpora-
tion is bound by the contract, although such defect or irregu-
larity in fact exists. If the contract can be valid under any
circumstances, an innocent party in such a case has a right to
presume their existence, and the corporation is estopped to
deny them." 10 Wall. 644, 645. The proposition was sup-
ported by citations of many English and American cases, and
among them *Royal British Bank* v. *Turquand*, (1856) 6 El. &
Bl. 327. And the justices of this court, while differing among
themselves in the application of the principle to municipal
bonds, have always treated *Royal British Bank* v. *Turquand*
as well decided upon its facts. *Knox County* v. *Aspinwall*,
21 How. 539, 545 ; *Moran* v. *Miami County*, 2 Black, 722,
724 ; *Gelpcke* v. *Dubuque*, 1 Wall. 175, 203 ; *St. Joseph* v.
*Rogers*, 16 Wall. 644, 666 ; *Humboldt* v. *Long*, 92 U. S. 642,
650. And see *Zabriskie* v. *Cleveland, Columbus & Cincinnati
Railroad*, 23 How. 381, above cited.

*Royal British Bank* v. *Turquand* was an action upon a
bond signed by two directors, and under the seal of the com-
pany, and given for money borrowed by a joint stock company
formed under an act of Parliament limiting its powers to the
acts authorized by its deed of settlement, and whose deed of
settlement provided that the directors might so borrow such
sums as should, by a resolution passed at a general meeting
of the company, be authorized to be borrowed. The defence
was that no such resolution had been passed, and that the
bond had been given without the authority of the share-
holders. The Court of Exchequer Chamber, affirming the
judgment of the Queen's Bench, without passing upon the
sufficiency of the resolution in that case, held the company
liable on the bond; and, speaking by Chief Justice Jervis,
said : "We may now take for granted that the dealings with
these companies are not like dealings with other partnerships,
and that the parties dealing with them are bound to read the
statute and the deed of settlement. But they are not bound
to do more. And the party here, in reading the deed of set-
tlement, would find, not a prohibition from borrowing, but a

permission to do so on certain conditions. Finding that the authority might be made complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which on the face of the document appeared to be legitimately done." 6 El. & Bl. 332.

The decision in *Royal British Bank* v. *Turquand* has been followed, and Lord Wensleydale's *dicta* to the contrary, a year later, in *Ernest* v. *Nicholls*, (1857) 6 H. L. Cas. 401, 418, 419, have been disapproved or qualified, in a long line of decisions in England. *Agar* v. *Athenæum Life Assurance Society*, (1858) 3 C. B. (N. S.) 725, 753, 755 ; *Prince of Wales Assurance Society* v. *Harding*, (1858) El. Bl. & El. 183, 221, 222; *In re Athenæum Society*, (1858) 4 K. & J. 549, 560, 561; *Fountaine* v. *Carmarthen Co.*, (1868) L. R. 5 Eq. 316, 321; *Colonial Bank of Australasia* v. *Willan*, (1874) L. R. 5 P. C. 417, 448 ; *Mahony* v. *East Holyford Co.*, (1875) L. R. 7 H. L. 869, 883, 893, 894, 902 ; *County of Gloucester Bank* v. *Rudry Merthyr Co.*, (1895) 1 Ch. 629, 633. The only English decision cited at the bar, which appears to support the opposite conclusion, is *Commercial Bank* v. *Great Western Railway*, (1865) 3 Moore P. C. (N. S.) 295, which, unless it can be distinguished on its peculiar circumstances, is against the general current of authority. See also a very able judgment of the Court of Errors and Appeals of New Jersey, delivered by Mr. Justice Depue, in *Hackensack Water Co.* v. *De Kay*, 9 Stewart, (36 N. J. Eq.) 548, 559–567.

In the present case, all natural persons or corporations by whom bonds of the Beattyville Company bearing the guaranty of the Louisville, New Albany and Chicago Railway Company, signed by the proper officers of the company and under its seal, were purchased in good faith, and without notice that there had been no petition of a majority of the stockholders for their execution, had the right to assume that such a petition had been presented, as required by the statute of 1883.

The records of the railroad corporation and of its board of directors, which would naturally show whether such a petition had or had not been filed, were private records, which a pur-

chaser of the bonds was not obliged to inspect, as he would have been if the fact had been required by law to be entered upon a public record. Brewer, J., in *Blair* v. *St. Louis, Hannibal & Keokuk Railroad*, 25 Fed. Rep. 684; *Hackensack Water Co.* v. *De Kay*, 9 Stewart, (36 N. J. Eq.) 548, 568; *McCormick* v. *Market Bank*, 165 U. S. 538, 551; *Irvine* v. *Union Bank of Australia*, 2 App. Cas. 366, 379.

It follows that the decree of the Circuit Court of Appeals, so far as it ordered the bill to be dismissed with regard to the guaranty on the bonds which the Louisville Trust Company and the Louisville Banking Company took in good faith, and without notice of any want of authority to execute the guaranty, was correct.

But, in regard to the guaranty on the bonds which the Louisville Banking Company took with notice that the guaranty had not been authorized by a majority of the stockholders, the decree of the Circuit Court of Appeals needs to be modified.

That court, in its opinion and decree, undertook to determine whether the Louisville, New Albany and Chicago Railway Company was liable upon the guaranty as a corporation of Kentucky, and as a corporation of Illinois.

Apart from the question whether it was a corporation of Kentucky, and from the difficulty of treating the negotiable guaranty upon each bond as itself divisible, binding the guarantor as a corporation of one State, and not binding it as a corporation of another State, there is an insurmountable objection to the decree in its present form.

The Louisville, New Albany and Chicago Railway Company is a party to this suit as a corporation of Indiana only, and not as a corporation of Kentucky. It could not, either as a corporation of both States, or as a corporation of Kentucky only, have brought this suit against corporations and citizens of Kentucky, in the Circuit Court of the United States for the District of Kentucky, without ousting the jurisdiction of the court. *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286; *St. Louis & San Francisco Railway* v. *James*, 161 U. S. 545. And citizens of Illinois also being defendants in the bill, it

is equally impossible to take jurisdiction of the plaintiff as a corporation of Illinois.

It necessarily follows that the rights and liabilities, if any, that it may have as a corporation of Kentucky, or as a corporation of Illinois, cannot be adjudicated in this case; and that the decrees, both of the Circuit Court and of the Circuit Court of Appeals, so far as regards the Louisville Banking Company, must be reversed, and the case remanded to the Circuit Court with directions to dismiss the bill as to the guaranty on the ten bonds of which the Louisville Banking Company was a *bona fide* purchaser, and to enter a decree, as to the guaranty on the forty-five bonds of which it was not a *bona fide* purchaser, that an injunction be issued against bringing suit upon the guaranty on these bonds against the Louisville, New Albany and Chicago Railway Company, a corporation of Indiana, and that there be stamped on these bonds the following word: "This guaranty is not binding on the Louisville, New Albany and Chicago Railway Company, a corporation of Indiana, and is to that extent cancelled, without prejudice to the rights or liabilities, if any, that it may have as a corporation of Kentucky, or as a corporation of Illinois."

*Accordingly, in the first case, the decree of the Circuit Court of Appeals is affirmed, and the case remanded to the Circuit Court of the United States with directions to dismiss the bill as against the Louisville Trust Company; and, in the second case, the decrees of both those courts are reversed, and the case remanded to the Circuit Court of the United States with directions to enter a decree in conformity with the opinion of this court.*