McCANNON, Respondent, v. LUSK-MITCHELL NEWS-PAPERS, INC., A Corporation, Appellant

(292 N. W. 82.)

(File No. 8291. Opinion filed May 11, 1940.)

Rehearing Denied June 20, 1940.

**Irving R. Crawford** and **Max Royhl,** both of Huron, for Appellant.

**Bielski, Elliott & McQuillen,** of Sioux Falls, for Respondent.

SMITH, P.J. In this action plaintiff seeks to recover a judgment against the defendant corporation for money alleged to be due under its contract to purchase shares of its own stock. The answer and counterclaim of defendant are upon the theory that the contract is ultra vires the corporation, and illegal and void as against public policy.) Findings, conclusions and (judgment were for plaintiff,) and the defendant corporation appeals.

'Power to purchase their own shares from surplus funds is expressly granted corporations of this state by statute, SDC 11.0303.' The statute reads as follows: "A corporation may, out of its surplus funds, by resolution of its stockholders or by their unanimous consent in writing, purchase, hold, and transfer shares of its own stock in such manner and for such price as may be by them agreed upon."

In the view of defendant, because of the meaning they ascribe to "surplus funds", the grant of power contained in this statute is limited to the purchase of its shares from net profits available for investment and transfer to surplus. Under this interpretation it is argued that a corporation must have a "surplus" and "quick assets" before it can engage to purchase its own stock. We are of the opinion that the Legislature intended a broader grant of power.)

(That in framing our statutes dealing with corporations the Legislature sought to provide safeguards which would tend to preserve the "capital stock" for the protection of those who were to become creditors, will not be questioned. Cf. SDC 11.0706, and see subsection 2, section 648, Penal Code, Chapter 17, Session Laws of 1864-5. The interpretation of SDC 11.0303, supra, advocated by defendant causes this section to reach beyond this obvious legislative purpose, and assumes an intention to provide a protection more extensive in character. It assumes an intention to preserve for the protection of creditors not only the capital stock, but all surplus as well, except such surplus as may arise from earnings and remain in the form of "quick assets". In

other words, according to this contention a corporation might have a "paid in" surplus, or one arising from appreciation of the value of its assets, and be without power to deal in its own stock even. though its surplus might exceed its capital stock.) Again, according to this view, no matter how substantial the surplus, and how profitable the enterprise, the statutory power could not be exercised if the corporation had no "funds", i.e., "quick assets".

■ (That such an interpretation out runs the legislative purpose seems certain. An intention to relate such purchases to an "earned surplus" or to "surplus profits" is negatived by the revision of this section which substituted "surplus funds" for "surplus profits". Cf. § 2917, C. L. 1887, and § 425, Rev. C. C. 1903. Further, the concept of a "surplus" as representing particular assets is foreign to corporate practice and usage. According to such usage, a "surplus" represents the excess of the aggregate value of assets over the sum of the corporate liabilities and capital stock. Edwards v. Douglas et al., 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235. Again, no practical safeguard of any interest is effected by a requirement that a corporation have a surplus and quick assets. Given a surplus, the quick assets may be acquired if the corporation desires to purchase its stock. It seems much more probable that this section sought nothing more than the furtherance of the object to which we have made reference, and that the Legislature used the term "funds" in that broader sense which signifies property or assets of any character.) The word has been frequently used in such a sense. Miller v. Bradish, 69 Iowa 278, 28 N. W. 594; In re Tatum, 61 App. Div. 513, 70 N. Y. S. 634; State v. Finney, 141 Kan. 12, 40 P.2d 411; Kratz v. Slaughter's Executors, 185 Ky. 256, 214 S. W. 878.

■ We conclude that the Legislature used the words "surplus funds" to describe every character of corporate surplus and that it intended, by SDC 11.0303, to authorize the purchase by a corporation of its own shares of stock to the extent, and only to the extent, that the intrinsic aggregate value of its assets exceeds the sum of all of its liabilities plus the amount of its capital stock.)

 It is asserted at bar that defendant was without a surplus at the times in issue. However, the Court made no finding on that subject, and the record before us discloses no request by defendant for a finding negativing a surplus. Attempt is made to raise the point that defendant lacked a surplus of any character through specifications of insufficiency. The findings and judgment made, however, are not vulnerable to such an attack. The Court having found that the corporation made and breached the contract, it is apparent that the findings are sufficient to support the judgment. The courts presume that corporations act within the scope of their powers. Eckhart v. Heier et al., 38 S. D. 524, 162 N. W. 150; Western & Southern Fire Insurance Co. v. Murphy, 56 Okl. 702, 156 P. 885; Ohio & M. Railway Company v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. Whether a court erred in failing to make a finding is not presented for review without an assignment of error based upon an adequate request for the desired finding. Hines v. Moulton, 63 S. D. 535, 261 N. W. 666.

Thus far we have been dealing with the existence of power on the part of the corporation to deal in its own shares. The proposition remaining for decision deals with the manner of the exercise of that power. Cf. Louisville, New Albany & Chicago R. Co. v. Louisville Trust Co., 174 U. S. 552, 19 S. Ct. 817, 43 L. Ed. 1081. (To authorize a purchase of its own shares by a corporation having surplus funds, the statute requires a "resolution of its stockholders" or "their unanimous consent in writing". SDC 11.0303, supra.

A brief statement of facts is essential to an understanding of this aspect of the appeal. One Alma Lusk was at one time the owner of forty-six preferred shares of the stock issued by defendant. Plaintiff argues that these shares had been cancelled prior to the execution of the contract at bar. Defendant insists that the shares have never been cancelled and are outstanding. All other stockholders signed a written consent to the purchase of plaintiff's shares according to the terms of the contract. The record discloses that the corporation has accepted benefits under the contract for

about three years. (Under various assignments the defendant corporation now urges that the contract does not bind it because there was neither a "resolution" of the stockholders nor a "unanimous consent in writing" of the stockholders authorizing the purchase. This contention must also be ruled against the defendant.

■ We need not determine whether the Alma Lusk stock was outstanding. That fact may be conceded for the purposes of this discussion. Manifestly, the provision requiring a resolution or consent of stockholders was inserted in the statute for the sole benefit of the stockholders to protect them against that which for all practical purposes amounts to a withdrawal of capital invested in the corporate enterprise. The validity of this conclusion seems self-evident. The provision being for the benefit of the stockholders, it follows that a corporation which has received the benefits of such a contract should not be permitted to urge the lack of such a stockholders' resolution or consent.) The matter is well stated by the 8th Circuit Court of Appeals in Westerlund et al. v. Black Bear Mining Co. et al., 203 F. 599, 613, in the following words: "But a corporation which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is estopped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease because they alone had any interest in a compliance with the legal requirement that they should assent to its execution."

Complaint is made of a number of rulings on evidence. These rulings have been carefully examined and are deemed not to have prejudiced defendant.

Finding no prejudicial error in the record, the judgment of the learned trial court is affirmed.

All the Judges concur.