## NEW RIVER LUMBER COMPANY v. GLOBE-WERNICKE CO. et al.

### (Appeal of Jellico Grocery Company.)

Eastern Section. May 21, 1927.

No petition for Certiorari was filed.

1. **Corporations. It is within the legislative power of a State to domesticate a corporation organized under the laws of another State.**
   It is well settled in this State, and definitely supported by the Supreme Court of the United States, that it is within the legislative power of the State to domesticate a corporation organized under the laws of another State and to give to such domesticated foreign corporation the same status as occupied by a corporation organized under the laws of this State.

2. **Statutes. Section 3 of chapter 31 of the Acts of 1877, construed.**
   A corporation complying with the provisions of section 3 of chapter 31 of the Acts of 1877, shall be deemed and taken to be a corporation of the State of Tennessee.

3. **Corporations. A foreign corporation domesticated in Tennessee is entitled to share with other resident creditors in the assets of an insolvent foreign corporation.**
   In an action where a domesticated foreign corporation having a claim against a bankrupt foreign corporation doing business in Tennessee sought to have its claim placed in the same class with other resident creditors, held that the foreign corporation having complied with the laws of Tennessee and being domesticated was placed on the same basis with other resident creditors of such insolvent corporation and entitled to participate in the distribution of the assets of the defunct foreign corporation equally with other simple contract creditors residents of Tennessee and natural persons of other States.

Appeal from Chancery Court, of Scott County; Hon. J. H. Wallace, Chancellor.

Reversed and remanded.

Chas. H. Davis and Howard H. Baker, of Knoxville, for appellant.
E. G. Foster, of Huntsville, for appellee.

SENTER, J. The original and amended bill filed in this cause is a general creditor's bill, asking for the appointment of a receiver, and to have the corporation wound up as an insolvent corporation. It is unnecessary to set out the pleadings to determine the questions made in this court. Among other creditors the appellant, Jellico Grocery Company, filed its petition in the cause, alleging that it is a foreign corporation engaged in the wholesale mercantile business at Oneida, Tennessee, and authorized to do business under the laws of the State of Tennessee; that in due course of trade the New River Lumber Company, a corporation, with an office and place of business at Norma, Tennessee, became indebted to petitioner in the sum of $6,207.39 for goods and merchandise sold and delivered to the New River Lumber Company at their place of business in Norma, Tennessee, and shipped from petitioner's place of business at Oneida, Tennessee; that said amount is just, due and unpaid. An itemized statement of the account is filed as an exhibit to said petition. The prayer of the petition is for a judgment against the New River Lumber Company for the amount of its claim with interest, and that the same be paid out of the assets of the New River Lumber Company as a preferred claim.

The question was made by Tennessee creditors that under the provisions of chapter 31 of the Public Acts of 1877, that resident Tennessee creditors including Tennessee corporations, and natural persons, were entitled to payment of their claim in full before the claims of foreign corporations were to be paid, the New River Lumber Company being an Ohio corporation doing business in the State of Tennessee.

An order of reference was made to the master to make an investigation of the petitions filed setting up the various claims and to report to the court at Chambers which creditors were entitled to preference. In the same decree and in Item 2 thereof, it was decreed as follows:

2.

"That all creditors who are residents of the State of Tennessee and all other creditors who are natural persons, nonresidents of the State of Tennessee, are entitled to payment of their claims in full before those of foreign corporations. Foreign corporations shall not be included within the preferred class, even though they may have been domesticated under the laws of the State of Tennessee."

In pursuance of the order of reference and of the direction of the Chancellor above quoted, the master filed his report, and clas-

sified the various claims. The claim of petitioner Jellico Grocery Company was placed in Class "D." Under classification "C" in the master's report is included all creditors of the New River Lumber Company entitled to preference in payment of their claims as resident of Tennessee, and as natural persons nonresidents of the State of Tennessee. Under the classification of creditors, corporations incorporated under the laws of other States, foreign corporations, were included in Class "D," and creditors of Class "D," by the report of the master, are postponed in participating in the distribution of the assets until after the payment of the preferred claims under the classifications of "B" and "C" are paid in full.

By the Chambers decree in the cause, of December 14, 1926, the Jellico Grocery Company, was allowed to file exceptions to the master's report. The exceptions of the Jellico Grocery Company to the report of the master in classing its claim among the class "D" creditors, and not reporting said claim among the Class "C" creditors, was overruled and disallowed by the Chancellor, and the report of the master as to said item was confirmed. To the action of the court in overruling said exceptions, and in decreeing that the Jellico Grocery Company was not entitled to participate with resident creditors of the New River Lumber Company, the Jellico Grocery Company excepted and has appealed to this court, and has assigned errors as follows:

I.

"The court erred in overruling the exceptions of appellant, Jellico Grocery Company, to the master's report of November 16, 1926, and erred in adjudging that Jellico Grocery Company is not entitled to participate along with resident creditors of the New River Lumber Company, and in confirming the report of the master to this effect.

II.

"The court erred in adjudging that foreign corporations shall not be included within the preferred class, even though they may have been domesticated under the laws of the State of Tennessee.

III.

"The court erred in failing and refusing to adjudge that Jellico Grocery Company, being domesticated, and with its place of business in Scott county, Tennessee, and subjected to process, is a resident creditor of Tennessee, and entitled to priority over the claims of foreign corporations who have not so domesticated, and which have not places of business in the

State of Tennessee, and in failing to adjudge that appellant, Jellico Grocery Company, falls within Class "C" in the payment of claims."

The case made by the record shows the petitioning creditor to be a foreign corporation which has duly qualified under the laws of the State of Tennessee to conduct its mercantile business in Tennessee. The complainant insolvent corporation is also a foreign corporation which duly complied with the laws of the State of Tennessee to conduct its business in this State. By the assignments of error filed, the question presented on this appeal is, whether the petitioning creditor is postponed in the distribution of the assets of the complainant to the claims of Tennessee creditors and natural persons residing outside of the State of Tennessee?

Chapter 31 of the Public Acts of the State of Tennessee for 1877 is entitled; "AN ACT to declare the terms on which foreign corporations organized for mining and manufacturing purposes may carry on their business, and purchase, and hold and convey real and personal property in this State." Chapter 122 of the Public Acts of 1891 amends chapter 31 of the Acts of 1877, and provides that the provisions of chapter 31 of the Acts of 1877 is broadened so as to include within its provisions all foreign corporations organized for whatever purpose.

Section 5, of chapter 31 of the Acts of 1877 provides as follows: "That the corporation, and the property of all corporations coming under the provisions of this act, shall be liable for all the debts, liabilities and engagements of the said corporations, to be enforced in the manner provided by law, for the application of the property of natural persons to the payment of their debts, engagements and contracts. Nevertheless, creditors who may be residents of this State shall have a priority in the distribution of assets or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries. . . ."

This Act has been construed by the Supreme Court of this State, and on certiorari from the Supreme Court of United States. The constitutionality of the Act with reference to section 5 thereof being violative of section 2 of Article 4 of the Federal constitution, was considered and decided by the Supreme Court of the United States in the case of Blake v. McClung, 172 U. S., 239 (41 L. Ed., 432).

In that case it was held that the Act in question was not violative of the Federal constitution insofar as section 5 thereof denied to foreign corporations the right to participate equally with local or State creditors residing within the State and natural persons outside of the State. It being held that a State had the right and power to provide the conditions upon which corporations organized

under the laws of other States could enter this State for the purpose of conducting its business; that a corporation of another State cannot invoke the constitutional guaranty of equal privileges and immunities of citizens in case of a descrimination against it in favor of the residents of the State, in respect to participation in the assets of an insolvent corporation. It was also held in that case that the Tennessee statute in question "so far as it subordinates the claims of private business corporations of other States, who are creditors of the corporation doing business in that State under that statute to the claims against the latter corporation of creditors residing in Tennessee, is not a denial of the 'equal protection of the laws;' secured by the fourteenth amendment to the Federal constitution to persons within the jurisdiction of the State." It was also held in that case: "A corporation is not a 'citizen' within the meaning of the constitutional provision that 'the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States." It will thus be seen that the Supreme Court of the United States in Blake v. McClung, supra, has definitely recognized the right of a State to give citizens of its own State a preferential right over foreign corporations in the distribution of the assets of a foreign corporation which has qualified under the laws of this State to conduct its business in this State. However, the contention is made by appellant that the holding of the Supreme Court of the United States in Blake v. McClung, applies to foreign corporations which have not been domesticated in the State of Tennessee, and that the petitioning creditor occupies a different position from that of the foreign corporation creditor which has not domesticated in this State. This presents the question whether a foreign corporation which has complied with the laws of this State in the matter of domesticating so as to entitle it to the protection of the laws of this State, and to participate on the same basis as resident creditors. This involves an interpretation of chapter 31 of the Acts of 1877, as amended by chapter 122 of the Acts of 1891 and chapter 81 of the Acts of 1895.

Section 2548, Shannon's Code, makes this provision with reference to the effect of compliance by foreign corporations with the Tennessee statute: "When a corporation complies with the provisions of this chapter (secs. 2546 and 2553a2) it shall be deemed and taken to be a corporation of this State, and it may then sue and be sued in the courts of this State, and shall be subject to the jurisdiction of this State as if it were created under the laws of the State of Tennessee."

A corporation is a "person" within the meaning of those provisions in the Federal constitution which forbid any State to deprive any person of property, "without due process of law."

Dugger v. Ins. Co., 11 Pick., 250; Railroad v. Harris, 15 Pick., 685; Harbison v. Iron Co., 19 Pick., 429, and cases cited therein.

As has been seen from the holding of U. S. Supreme Court in Blake v. McClung, supra, a corporation of another State is not within the jurisdiction of Tennessee, so as to prevent a denial of "the equal protection of the laws, where such corporation is not doing business in Tennessee under conditions that subject it to process issuing from the courts of Tennessee at the instance of suitors. As we construe the effect of the holding in the case of Blake v. McClung, a foreign corporation which has not brought itself within the jurisdiction of this State by domesticating and qualifying under the laws of this State, and has not made itself subject to the process issuing from the courts of Tennessee, is postponed in the payment of its claim against an insolvent foreign domesticated corporation doing business in this State, until the payment in full of all simple contract creditors residents of this State and persons of other States. If in this we are correct, it would appear that if a foreign corporation by complying with the laws of the State of Tennessee, and has become domesticated, and has brought itself within the jurisdiction of Tennessee courts, and is made subject thereby to process issuing from the courts of this State, it would be entitled to participate equally and on the same basis with resident creditors of a foreign insolvent corporation being administered within this State.

In the case of Coke & Coal Co. v. Steel Co., 123 Tennessee, 432, the question of the legal status of a 'foreign corporation which had domesticated in this State by complying with the provisions of chapter 31 of the Acts of 1877, and amendatory acts thereto, was fully discussed and decided by our Supreme Court. In that case the suit was begun as an original attachment suit. It was alleged in the bill for the attachment that the defendant was a corporation organized under the laws of Alabama, and a nonresident of this State. A writ of attachment was issued and levied on the property of the defendant. The defendant executed a replevy bond and regained possession of the property levied on. Subsequently the defendant filed a plea in abatement to the original attachment and suit on the grounds that the original suit having been brought against the defendant as a nonresident, while in fact the defendant had an office, agents, superintendents, etc., in Hamilton county, Tennessee, and was conducting an extensive business and operating a large blast furnace in said county; that it had, in all respects, complied with the laws of Tennessee prescribing the terms upon which foreign corporations may be incorporated in and do business in Tennessee; that it was not subject to suit by original attachment and publication as a nonresident; that no proper service of process

having been made upon the defendant the court was without jurisdiction. Other questions were presented by the plea in abatement in that case unnecessary to refer to here. The decree of the Chancellor sustaining the plea in abatement as to the attachment was affirmed, on appeal, by the Supreme Court. It was held in that case by the lower court, that the attachment was wrongfully sued out, and dismissed the bill in so far as it prayed for the writ of attachment. Subsequent to the hearing of the cause personal process was issued and served on a resident officer of the defendant, and it was held that the complainant was entitled to recover of the defendant, but not the full amount claimed, and referred the matter to the master to ascertain the real indebtedness due to complainant by defendant. From this decree the complainant appealed to the Supreme Court. By the first assignment of error the action of the Chancellor in decreeing the attachment void and of no effect was challenged. This presented the question determined by the Supreme Court on appeal as to whether a domesticated foreign corporation was a nonresident of the State of Tennessee so as to subject its property in this State to attachment. After a full review of our legislative enactments on the subject of attachments of nonresidents of the State by publication in lieu of personal service, the court in that connection considered and determined the status of a foreign corporation having domesticated under the laws of the State of Tennessee. The opinion in that case reviews and construes chapter 31 of the Acts of 1877, and the amendatory acts thereto, and also decisions by the Supreme Court of the United States, and quoted with approval the following from Railroad v. Harris 12 Wall., 82 (20 L. Ed., 354): "Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, quo ad hoc any property within its jurisdiction. That this may be done was distinctly held in Ohio & Miss. Railroad Co. v. Wheeler, 1 Black., 297 (17 L. E., 130)." After quoting the above our Supreme Court continued with the following statement:

"Following the clear intimation of that opinion, and upon reasoning we think unanswerable, it was held by this court that, 'the legislation (the Act of 1877) by which the corporations of other States are made corporations of this State is clearly within legislative power,' and that having complied with the provisions of the Act, and in view of its ownership of property, and the other evidences, hereinbefore set out, of its having domesticated itself, that 'the fiction that the corporate entity is in Missouri is overthrown by the fact that it is likewise a domestic corporation and stands in all particulars as any other person." This case has been often referred to,

and the soundness of its conclusion, when applied to statutes such as ours, and under conditions shown existing in that case or in the present, has nowhere, so far as we have discovered, been questioned. It has been often referred to by this court in opinions published and unpublished. It stands as a law of this State today unmodified by any subsequent holding of this court.''    .

The authorities are numerous in support of the principle that a corporation of one State may be made a corporation of another State by the legislature of that State. In the case of Louisville, etc., R. R. Co. v. Louisville Trust Co., 174 U. S., 552, 43 L. Ed., 1081, it is said: ''This court has often recognized that a corporation of one State may be made a corporation of another State by the legislature of that State, in regard to property and matters within its territorial jurisdiction,'' citing numerous cases. In 5 Thompson on Corp. (2 Ed.), sec. 6629, it is stated by the author: ''It is well settled that a corporation of one State may be made a corporation of another State, by the legislature of that State, in regard to property and acts within its territorial jurisdiction. . . .''

In Coke & Coal Co. v. Steel Co., supra, page 450, our Supreme Court, speaking further on the subject, says:

''We have examined many of the authorities relied on by complainant to sustain his insistance that it is beyond legislative power to domesticate a foreign corporation, and find they involve a construction of statutes dissimilar from ours, or else controversies impertinent to that here presented. Even had it been found that these cases, or any considerable number of them, support the contention of complainant, we would not be disposed to follow them, in view of the clearly announced principle to the contrary found in the South Treadagar Iron Co. case (85 Tenn., 189) fortified, as it is, by the authority of the Supreme Court of the United States. . . .''

We think it is well settled in this State, and definitely supported by the Supreme Court of the United States, that it is within the legislative power of the State to domesticate a corporation organized under the laws of another State, and to give to such domesticated foreign corporation the same status as occupied by a corporation organized under the laws of this State. We think the legal effect of section 3 of chapter 31 of the Acts of 1877, and chapter 81 of the Acts of 1895, and section 3 thereof, clearly states the legislative intent, and it is so expressed, that upon a compliance by a foreign corporation with chapter 31 of the Acts of 1877, it ''shall be deemed and taken to be a corporation of this State.''

The conclusion we reach is, that a foreign corporation, one organized under the laws of another State, which has complied with

the laws of the State of Tennessee and has become domesticated in the State of Tennessee, and is conducting its business in the State of Tennessee, and maintaining its offices and place of business and mercantile establishment in the State of Tennessee, and from its offices and store and mercantile business in Tennessee sells and delivers merchandise to a foreign corporation which has domesticated and is conducting its business in the State of Tennessee, and which has filed a general creditor's bill and is being wound up as an insolvent corporation, that such a creditor of such an insolvent corporation, in that situation, is, by the provisions of section 3 of chapter 31 of the Acts of 1877, and amendatory acts thereto, and as construed by our Supreme Court in Coke & Coal Co. v. Steel Co., supra, placed on a parity, or on the same basis, with other resident creditors of such insolvent corporation, and entitled to participate in the distribution of the assets of such foreign corporation equally with other simple contract creditors residents of Tennessee and natural persons of other States.

Appellee in its brief in reply to the assignments of error of appellant, contends that appellant did not except to the Chambers decree of the Chancellor and pray an appeal therefrom within twenty days after the decree was pronounced at Chambers, which Chambers decree provided that foreign corporation creditors, even though domesticated in this State, were postponed to resident creditors. It being insisted that said decree was final, and that a failure to except to the decree and pray an appeal operated as a waiver.

It appears from the record that the report of the master classifying appellant's claim in Class "D" was excepted to, and the exceptions to said report was by permission of the court. Whereupon, the Chancellor overruled the exceptions of appellant to the master's report on said matter, and to this action of the court and in confirming the said report on said item, appellant excepted and prayed and was granted an appeal. We deem it unnecessary to go into a further discussion of this question, Suffice it to say that we think the appeal was properly prayed and granted and is properly before this court for review.

It results that the assignments of error of appellant, the Jellico Grocery Company, are sustained, and the decree of the Chancellor is reversed and the cause remanded to the chancery court that the appellant petitioner, the Jellico Grocery Company, may be classified as other resident creditors as set forth in this opinion. The cost of this appeal will be paid as other costs of the cause out of the assets of the complainant insolvent corporation.

Owen and Heiskell, JJ., concur.