## COMMISSIONER OF INTERNAL REVENUE v. NEWPORT CO.

### No. 4896.

Circuit Court of Appeals, Seventh Circuit.

July 8, 1933.

G. A. Youngquist, Sewall Key, and Norman D. Keller, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. R. Johnston, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Charles F. Fawsett, of Milwaukee, Wis., and Richard S. Doyle, of Washington, D. C., for respondent.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, and involves the liability of respondent as a transferee, under section 280 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 61, 26 USCA § 1069 and note,[1] for a deficiency in income and profits taxes for the year 1917, imposed upon the Newport Chemical Works, Inc., which is hereinafter referred to as the Chemical Works. The only question presented is whether the Statute of Limitations bars the assessment and collection of the tax against respondent as transferee of the Chemical Works.

The findings of the Board disclose the following facts: Respondent was a Delaware corporation with its principal place of business at Carrollville, Wisconsin, and its offices at Milwaukee. The Newport Chemical Works was a Maine corporation having a manufacturing plant at Carrollville and its offices in Milwaukee. For the taxable year 1917, the Newport Mining Company, a Maine corporation doing business in Wisconsin, the Chemical Works, and the Dunn Iron Mining Company were affiliated companies. The Chemical Works originally filed a separate income tax return on April 1, 1918, showing an income tax liability of $18,405.65, and an excess-profits tax liability of $12,892.03. The Newport Mining Company and the Dunn Company filed a consolidated excess-profits tax return for 1917. At the request of the representatives of the affiliated companies, respondent later determined that the Newport Mining Company and the Dunn Company and the Chemical Works were affiliated for the taxable year 1917 for excess-profits tax purposes only.

About the middle of 1919, the Chemical Works transferred all its assets to respondent in consideration of the issuance by re-

[1] "(a) The amounts of the following liabilities shall, * * * be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *.

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act. * * *

"(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; * * *

"(c) For the purposes of this section, if the taxpayer is deceased, or in the case of a corporation, has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had the death or termination of existence not occurred.

"(d) The running of the statute of limitations upon the assessment of the liability of a transferee or fiduciary shall, after the mailing of the notice under section 1048 to the transferee or fiduciary, be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary * * *, and for 60 days thereafter."

spondent of its stock to the stockholders of the Chemical Works, and in turn respondent assumed all the liabilities of the Chemical Works. The value of the assets thus transferred was materially in excess of the amount of the tax herein claimed, and a substantial part of those assets was located in Wisconsin. The Newport Mining Company, the Chemical Works, and their successor, the respondent, and some of the other affiliated companies, maintained offices on the same floors of the same building in Milwaukee, and they were controlled or owned, directly or indirectly by Ferdinand Schlesinger, his wife, Matilda, his sons, Armin A. and Henry J. and his daughter, Gertrude McLaren. Ferdinand and his two sons above referred to, together with M. T. McLaren and E. G. Wilmer, were directors and officers of the Chemical Works at the time it was dissolved, as hereinafter referred to, and they were also elected as the first board of directors of respondent on July 15, 1919.

It is admitted that the statutory period of limitations for assessment against the Chemical Works expired April 1, 1923, and as against the transferee, April 1, 1924, unless extended by waivers. The deficiency notice was mailed to respondent on March 14, 1927, which was after the statutory period of limitations. Petitioner contends that waivers were filed on behalf of the Chemical Works which extended that statutory period to December 31, 1926, which was after the enactment of the Revenue Act of 1926, and less than one year prior to the deficiency notice.

·The instruments relied upon as waivers were all duly received and filed by the Commissioner and are characterized as follows:

(1) Instrument executed December 15, 1920, without time limit, signed in the name of the Chemical Works by Edward G. Wilmer, vice-president. By order of the Commissioner on April 11, 1923, all waivers for 1917, unlimited in their terms as to time, expired on April 1, 1924. II–1 C. B. 174; see also Wirt, Franklin v. Commissioner, 7 B. T. A. 636.

(2) Instrument dated December 11, 1923, signed in the name of the Newport Mining Company by H. J. Schlesinger, vice-president, purporting to be effective until March 15, 1925, and to apply to the Newport Mining Company and its affiliated companies.

(3) Instrument undated but received by the Department, February 26, 1924, signed in the name of the Chemical Works by H. J. Schlesinger, vice-president, purporting to extend the period for assessment for one year beyond the time provided by statute or by any previous extension on file with the Bureau. Petitioner admits that this waiver did not extend the time for assessment beyond April 1, 1925.

(4) Instrument dated December 23, 1924, signed in the name of the Chemical Works by H. J. Schlesinger as vice-president, to be effective to April 1, 1926.

(5) Instrument dated January 12, 1926, signed in the name of the Chemical Works by H. J. Schlesinger as vice-president, effective to December 31, 1926. The record discloses that H. J. Schlesinger severed all connection with respondent in the spring of 1922, and had no interest in it thereafter.

(6) Instrument dated January 11, 1926, which purports to be exceptions of the Chemical Works to a tentative determination and deficiency in tax referred to in a letter from the Commissioner dated December 14, 1925. This instrument was not signed, but the facts therein alleged were verified under oath by A. A. Schlesinger. It expressed a willingness and intention to file forthwith all waivers necessary to permit a final determination of the exceptions before the expiration of any period of limitation provided by law, and agreed that the instrument they presented should have the effect of such formal waivers.

(7) Instrument dated November 6, 1926, signed in the name of the respondent, the Newport Company, by A. A. Schlesinger, president, as successor in interest to the Chemical Works, purporting to be a waiver by the Chemical Works of the time for making any assessment against it for 1917 and 1918 and the first half of 1919, to be effective until December 31, 1927.

It is contended by respondent that the waivers upon which petitioner relies were all executed without authority and are insufficient to extend the time for making the assessment beyond the time prescribed by statute. To support this contention it relies upon a decree of the Supreme Judicial Court of Maine, dated March 1, 1920, which purports to dissolve the Chemical Works, without the appointment of a trustee or receiver. The decree recited that the cause was heard on bill and answer and that it appeared that the defendant company had no debts and no assets. The stockholders' bill which constituted the basis of this decree was filed January 20, 1920, under chapter 51 of the Maine Revised Statutes (1916), the substance of the

pertinent parts of which are marginally set forth.[2] It alleged that there were existing liabilities against said corporation, and no assets requiring distribution among the stockholders. The answer was filed February 13, 1920, and admitted all the averments of the bill. The evidence further discloses that on the date this decree was entered, the same court also entered a decree dissolving the Newport Mining Company.

Petitioner challenges the effect of this decree, contending that it is void for lack of the court's jurisdiction to order dissolution, because the bill and answer allege that there were liabilities; that under such circumstances the court should have appointed a trustee, and for failing to do so, the decree is void and may be attacked collaterally. We think there is no merit in this contention. The court had jurisdiction of the parties and the subject matter, and hence it had the power to decide the question then before it, rightly or wrongly. Under petitioner's statement of the facts the most that can be said is that the court erred in the exercise of its rightful power, and its decision cannot be collaterally attacked. But we are not in accord with petitioner's statement of the facts. While the

bill and answer allege the existence of liabilities, and the decree recites that it was heard on bill and answer, yet it does not necessarily follow that no other evidence was submitted. The decree was entered thirty-nine days after the bill was filed, and more than two weeks after the answer was filed, and in those periods of time, conditions could have changed. Moreover, the allegations in the pleadings may have been erroneous, and they may have been made for the purpose of having a trustee appointed, yet under such a state of facts the court would not be bound by the allegations but would form its decree in accordance with the facts. The record does not disclose what evidence was introduced, but the court found that neither debts nor assets existed, and we assume that that finding was based on evidence submitted at the hearing, and we shall consider the bill as amended to conform to the facts. While the statute refers to liabilities rather than debts, yet we have no doubt that the Maine court used the word debts in the sense of liabilities, and under the present facts, we are not inclined to indulge in nice distinctions in order to defeat that court's jurisdiction. We are convinced that the decree of the Maine court is valid and effective, and that the Chemical Works did not exist after March 1, 1923. See Oklahoma Gas Co. v. Oklahoma, 273 U. S. 257, 47 S. Ct. 391, 71 L. Ed. 634. The only waiver executed prior to that time was numbered one, supra, and it expired April 1, 1924, in accordance with the order of the Commissioner of Internal Revenue. The other purported waivers were executed after the Chemical Works had ceased to exist, and for that reason they have no force or effect.

It is also contended by petitioner that since the Chemical Works held itself out as a corporation, and was so represented by respondent, that fact will preclude respondent from denying its corporate existence. After April 1, 1924, the Chemical Works could not so represent itself, and the Board found as a matter of fact that respondent made no such representations. Petitioner further contends that respondent led petitioner to believe that the waivers were executed with full authority and hence is estopped to deny their validity. On this question of fact the Board found adversely to petitioner's contention. There is substantial evidence in the record to support all findings of fact made by the Board.

Decision affirmed.

---

[2] Section 81 provides that corporations whose charters expire or which are otherwise terminated have a corporate existence for three years thereafter for the purpose of prosecuting or defending suits, settling and closing their concerns, disposing of their property, and dividing their capital.

Section 89 provides that upon a vote of the stockholders to dissolve a corporation, a bill in equity may be filed by any officer, stockholder or creditor before the Supreme Judicial Court in the county in which the corporation has an established place of business, or in which it held its last stockholders' meeting; that upon said bill such notice shall be given as ordered by any justice of said court, in term time or vacation, and upon proof thereof, such proceedings may be had according to the usual course of suits in equity, that said corporation shall be dissolved and terminated; and that upon proof that there are no existing liabilities against said corporation, and no existing assets thereof, requiring distribution among the stockholders, the court may dissolve said corporation without the appointment of trustees or receivers.

Section 90 provides that the court has jurisdiction in said cause to appoint receivers, issue injunctions and pass interlocutory decrees and orders according to the usual course of proceedings in equity; and shall, upon dissolving said corporation, or terminating its charter, appoint one or more trustees who shall have all the powers of similar trustees, but that said court may superintend the collection and distribution of the assets, and may retain the bill for that purpose.

Section 101 provides that corporations, not created for literary, benevolent, or banking purposes, shall not so divide any of their corporate property as to reduce their stock below par value, until all debts are paid, and then only for the purpose of closing their concerns.