## COMMISSIONER OF INTERNAL REVENUE v. BRYSON.

## BRYSON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7519.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1935.

WILBUR, Circuit Judge, dissenting.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, L. W. Post, and M. H. Eustace, Sp. Assts. to Atty. Gen., for the Commissioner.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

Brought to this court on petition for review of a final decision and order of redetermination of the United States Board of Tax Appeals, this · proceeding involves alleged deficiencies in income and profits taxes for the years 1917 and 1918, amounting to $2,863.42 and $5,741.89, respectively. The Board found that the alleged taxpayer, the respondent herein, was not liable for any deficiency of the Bryson-Robison Corporation for 1917 and 1918, but that he was liable as transferee of the assets of the corporation for its deficiency for 1919, in the amount of $2,273.-54, with interest.

The Commissioner has filed a petition for review of the Board's decision, as to the years 1917 and 1918. The respondent filed a petition attacking that portion of the Board's decision which found him liable for the deficiency for the year 1919. No brief has been filed or personal appearance made in this court in behalf of the respondent, and we assume that his petition "for cross-appeal" and review has been abandoned.

Prior to entering its final decision and order of redetermination, the Board at different stages of the present controversy filed an "opinion," a "memorandum opinion and order," a "memorandum opinion," and an "order." Only the first of these has been reported. 22 B. T. A. 395.

As found by the Board, the facts are substantially as follows:

In 1916 the Bryson-Robison Corporation was organized under the laws of the state of Washington. Its stock was divided equally between the respondent and Lester L.· Robison. Robison was president of the corporation and the respondent was secretary and treasurer. No for-mal corporate meetings were held and no regular set of books or accounts was kept. The corporation engaged in business until June 4, 1919, when the respondent purchased Robison's stock and interest for $70,000, took possession of the corporation's entire assets, and operated the business thereafter as an individual.

On May 14, 1930, the Secretary of State of the State of Washington promulgated the following certificate:

"I, J. Grant Hinkle, Secretary of State of the State of Washington, and custodian of the Seal of said State, do hereby certify that I have carefully examined the records of this office and find that the 'Bryson-Robison Corporation', a domestic corporation of Walla Walla, Washington, filed a copy of its articles of incorporation in this office on the 13th day of October, 1916.

"I further certify that the above mentioned corporation was stricken from the records of this office July 1, 1921, and was further 'Stricken from the Records and dissolved' July 1, 1924, under the. provisions of Chapter 144, Laws of Washington of 1923, for failure to pay the annual license fees and accruing penalties, the last license fee paid being for the fiscal year ending June 30, 1919.

"And I further certify that the above mentioned corporation has had no legal existence since stricken July 1, 1921, pursuant to Chapter 140, laws of 1907."

The corporation. filed its income tax return for 1917 on March 30, 1918, and its return for 1918 on June 16, 1919.

On February 12, 1923, the respondent executed a purported waiver agreeing to an extension of time to one year after date for the assessment of 1917 income taxes against the corporation.

On January 2, 1924, he executed what purported to be an unlimited waiver in respect of 1917 and 1918 income taxes. of the corporation.

The text of that waiver was as follows:

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Bryson-Robison Corp.,. of Walla Walla, Washington, and the Commissioner of Internal Revenue, hereby consent to a determination, assessment and collection of the amount of income, excess-profits, or war-profits taxes due un-

der any return made by or on behalf of the said Corporation for the years 1917 and 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes', approved August 5, 1909, irrespective of any period of limitations.

"[Signed] Elmer D. Bryson,
"Former Secretary of the Bryson-
Robison Corp.
"Taxpayer,
"[Signed] D. H. Blair, c.
"Commissioner."

Accompanying the waiver of January 2, 1924, was a letter addressed to the Commissioner, signed by the present respondent's attorney. The text of that letter follows:

"Elmer D. Bryson has handed me your office letter of the 19th inst. addressed to Bryson-Robison Corporation, in his care, advising that it will be necessary for this corporation within twenty days from the date of your letter to advise you of its acquiescence in the determination of net income and invested capital as found by the Revenue Agent's report dated October 22, 1923, in order that you may further consider an application for computation of tax under the provisions of Section 210, Revenue Act 1917 and Sections 327-8, Revenue Act 1918.

"You have already been informed that this corporation has been entirely out of business since July, 1919, and since that date has not owned or possessed any property of any character and the corporation has long since been stricken from the corporate rolls of this state, where it was incorporated. It has not functioned in any manner since that date, and being stricken from the corporate rolls naturally the former officers of the corporation cannot legally presume to act for it since it no longer exists.

"During the life of the corporation Elmer D. Bryson was secretary of the corporation, but will not presume to assume [sic] to act in that capacity after all of these years since its dissolution. The only way he could make a report would be that as that [sic] of an individual, who was formerly secretary of a corporation which has been defunct for a period of over four and one half years,

and during which period it has neither functioned nor owned any property. * * *

"Your office letter above referred to is being by him referred to Cosper Accounting Company, who has been looking after this matter and it will probably give your letter such further attention and reply as it deems proper and necessary. We deemed it proper that this status be called to your attention, as no former officer will assume any authority not vested in him.

"Yours very truly,
"Herbert C. Bryson."

Deficiencies were assessed against the taxpayer corporation on March 21, 1924, for 1917, and on September 1, 1925, for 1918. The sixty-day letters to the respondent herein and to Robison as transferees were mailed November 3, 1926. The net value of the assets transferred to Bryson exceeded the amount of the deficiencies.

The Board held that the waivers were not sufficient to extend the periods of assessment and collection of the 1917 and 1918 taxes against the transferor corporation, and that, since such assessment and collection were barred prior to the passage of the Revenue Act of 1926 (44 Stat. 9), assessment and collection of the liability of the respondent herein, as transferee, were also barred.

The Commissioner concedes that without any waiver, the statute of limitations would have run against the 1917 taxes on March 30, 1923, and against 1918 taxes on June 16, 1924, in each case five years after the filing of the respective return. As the Commissioner points out, since it is settled that a waiver is effective when executed after the running of the statute, it is necessary to consider only whether the waiver of January 2, 1924, was sufficient to extend the periods for assessment against the corporation for 1917 and 1918 taxes, so as to make timely the assessments of March, 1924, and September, 1925.

The Commissioner's argument is threefold: First, that the waiver was clearly sufficient to extend the periods of assessment against the corporation; second, that if the waiver could not bind the corporation, it at least bound the respondent herein, individually; and, third, that in any event, "apart from technical considerations," "in view of the fact that the

extensions of time for assessment were necessitated by the respondent's claim for special assessment," etc., the respondent is estopped from denying the validity of the waivers.

Under the first proposition, it first becomes necessary to inquire whether the corporation was in existence at the time when the waiver of January 2, 1924, was executed. If the corporation was a legal entity at that time, it next must be determined whether the waiver was sufficient to bind the company.

There is no need to labor the point as to whether the corporation was in existence on January 2, 1924; for the Commissioner not only concedes but insists that this was so. In any event, the jurisprudence of the state of Washington establishes the proposition beyond a doubt.

By coincidence, the name of the corporation involved in the case of Haynes v. Central Business Property Co., 140 Wash. 596, 600, 601, 249 P. 1057, 1058, was stricken from the records of the Secretary of State on the same day as that on which the corporation here involved was stricken from the rolls; that is to say, July 1, 1921. The parallelism is important, since the date was prior to the enactment of chapter 144, p. 462, Session Laws of Washington 1923, section 5 of which reads in part as follows: "Every corporation whose name has been, or shall hereafter be, stricken from the records of the office of the Secretary of State in pursuance of law for failure to pay its annual license fee for two years, is hereby authorized and permitted to apply to the Secretary of State for reinstatement at any time within three years after its name has been stricken," etc.

In the Haynes Case, supra, the Supreme Court of Washington said: "Even though the corporation had become bankrupt and its name stricken from the records in the secretary of state's office, it had not ceased to exist as a corporation."

In Boyce v. Hinkle, 139 Wash. 164, 167, 245 P. 927, 928, the court specifically held that the act of 1923 was retroactive: "The meaning of this section is plain and unambiguous. The Legislature has said in clear and concise language that this corporation, whose name was stricken in July, 1916, has until July,

1919, to reinstate itself. There can be no question, then, that the statute is retrospective in character. * * * It follows, therefore, since the act is retrospective in character, that upon the date when the act became effective, June 7, 1923, all corporations whose names had been stricken from the roll for more than three years prior to the passage of the act, and who had not been reinstated, were subject to being dissolved by a notation duly spread upon the records of the office of the secretary of state."

See, also, State ex rel. New Arlington Hotel Co. v. Hinkle, 115 Wash. 298, 300, 197 P. 4; Wilkins Ditch Co. v. Drake, 115 Wash. 603, 606, 197 P. 769; State ex rel. Bowen v. Superior Court, 135 Wash. 315, 318, 237 P. 722; Patterson v. Ford, 167 Wash. 121, 124–126, 8 P.(2d) 1006; Moore v. Los Lugos Gold Mines, 172 Wash. 570, 589, 21 P.(2d) 253.

In the light of the foregoing decisions, there can be no doubt that on January 2, 1924, when the waiver in question was signed, the Bryson-Robison Corporation was in legal existence. As was said by this court in the case of California Iron Yards Co. v. Commissioner of Internal Revenue, 47 F.(2d) 514, 516, "The status of such a corporation * * * is one of suspended animation."

While assuming that the law of the state in which a corporation is domiciled governs as to the question of whether or not the corporation is in legal existence at any given time, the Commissioner, quoting from the California Iron Yards Co. Case, supra, indicates that the validity of the waiver is to be determined by federal law. Concurring in that view, we turn to the rule laid down by the Supreme Court of the United States on the proper method by which a corporation performs official acts.

In Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 573, 19 S. Ct. 817, 825, 43 L. Ed. 1081, the court said: "A corporation, though legally considered a person, must perform its corporate duties through natural persons, and is impersonated in and represented by its principal officers, the president and directors, who are not merely its agents, but are, generally speaking, the representatives of the corporation in its dealings with others. [Cases cited.] And the appropriate form of verifying any written obliga-

tion to be the act of the corporation is by affixing the signatures of the president and secretary and the corporate seal."

An inspection of the photostatic copy of the waiver of January 2, 1924, one of the exhibits herein, discloses that the corporate seal had not been affixed to the document.

Furthermore, at the bottom of the form of waiver appears the following paragraph: "If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located, to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed."

Neither on its face, therefore, nor in the light of the accompanying letter from the respondent's attorney, can the document be regarded as a valid waiver. It is signed by a *former* secretary of the corporation. It does not bear the corporate seal. The attorney's letter emphatically puts the Commissioner on notice that the respondent considers himself only a former officer of the corporation, and that he will "not presume to act" for it. This is not a case where substance is to be sacrificed to form; the document is not a valid waiver in form, and avowedly was not intended to be such. Here form and substance coincide, and as a corporate waiver the paper of November 2, 1924, is a nullity.

■ Next to be considered is the adequacy of the document as a waiver binding the respondent personally, as transferee of the Bryson-Robison Corporation. This contention can be disposed of briefly.

The text of the document purports to bind the corporation. It is signed by the respondent as "former secretary" of the corporation, which is described as "taxpayer." The accompanying letter plainly asserts that "the only way he [the respondent] could make a report would be * * * as * * * an individual, who was formerly secretary of a corporation," etc. Neither the purported waiver nor the accompanying letter contains any statement that the respondent was the transferee of the corporation. Without distorting plain words from their ordinary meaning, a transferee's waiver cannot be spelled out of the inchoate paper that we are here considering.

Finally, we have the Commissioner's contention that the respondent is estopped from denying that he waived the statute of limitations, because, "Except for the waivers, the Commissioner would have made the assessments within the original periods."

■ It is fundamental in the law of estoppel, however, that only those statements are binding which would tend to mislead a reasonable man. If on their face the statements do not tend to lull the other party into security, but on the contrary contain an affirmative warning, there is no estoppel. When the respondent informed the Commissioner that he would not presume to act for the corporation, when the document was signed only by a "former officer," and when it failed to bear the corporate seal, the Commissioner, as a reasonable man, should have been put on notice that, both in fact and in law, he had before him an abortive paper, binding neither corporation nor individual.

■ Since the waiver of 1924 was a nullity, the period of limitations ran in favor of the corporation, and therefore in favor of the respondent as alleged transferee. In United States v. Updike, 281 U. S. 489, 493, 494, 50 S. Ct. 367, 368, 74 L. Ed. 984, the court was considering section 280 of the Revenue Act of 1926 (26 USCA § 1069), which is precisely one of the sections relied upon herein by the Commissioner. In that case the Supreme Court said:

"The plain words of section 280 (a) are that, 'except as hereinafter in this section provided,' the liability of the transferee shall be 'assessed, collected, and paid,' subject, among other things, to the same 'provisions and limitations as in the case of a deficiency in a tax imposed by this title (including * * * the provisions authorizing * * * proceedings in court for collection * * *).' Nothing thereinafter provided in that section affects the application to the present case of these general words in respect of limitations, for, while the succeeding paragraphs contain provisions of limitation in respect of assessment, they contain none in respect of collection. * * *

"Second. It follows that, if by section 278 (d) the period of limitation had run in favor of the corporation, it had run in favor of the transferees."

The Commissioner relies heavily upon the case of Helvering v. Newport Co., 291 U. S. 485, 486, 487, 54 S. Ct. 480, 78 L. Ed. 929, for the proposition that it is "not material whether the waiver of January, 1924, extended the Government's time to proceed against the original taxpayer; and since the respondent contended and the Board of Tax Appeals held that the waiver was signed by him as an individual, there can be no question but that the assessment made against him in November, 1926, was timely."

An examination of the petition filed before the Board by the respondent herein, however, discloses that he denied that he was "a transferee of one half of the assets of the Corporation"; averred that he purchased the entire assets from Robison as "an independent, outright purchase"; and denied that he had ever "signed a waiver of the statute of limitations as an individual." The statement contained in the Commissioner's brief is therefore inaccurate, in so far as it purports to state the respondent's position.

It is true that the Board, in its memorandum opinion of July 20, 1932, said: "The most that could be said for the waiver which we have set out above, is that it was executed by Bryson as a transferee of the assets of the original taxpayer and we have held that a waiver executed by a transferee purporting to extend the time of assessment and collection of the tax against the original taxpayer, is ineffective to extend the statute of limitations as to the original taxpayer."

█ If the foregoing statement is to be taken as meaning that the Board concluded from an inspection of the purported waiver that it was signed by the respondent as transferee of the corporation, we need only observe that this court is not bound by an erroneous conclusion of law on the Board's part. It is well settled that an appellate tribunal may affirm a case on grounds other than those which prompted the judgment below.

The purported waiver is before us, and it speaks for itself. It is valid neither as against the corporation nor as against the respondent individually.

The Newport Co. Case, supra, can be distinguished from the present controversy on the facts. There the waiver was signed by the president of the *transferee* corporation, as "successor in interest" to the transferor company; here we have no waiver signed by any one as transferee, but only by the "former secretary" of the original taxpayer corporation.

█ It is familiar doctrine that "taxing acts, including provisions of limitation embodied therein [are] to be construed liberally in favor of the taxpayer." United States v. Updike, supra, 281 U. S. 489, at page 496, 50 S. Ct. 367, 369, 74 L. Ed. 984.

The decision of the Board of Tax Appeals is affirmed.

DENMAN, Circuit Judge (concurring).

I concur in the decision. The body of the waiver produced by the Commissioner purports to be an agreement between the Bryson-Robison Corporation and the Commissioner. It is on a printed form, furnished by the Commissioner, and the only insertions possibly to be attributed to the taxpayer to whom it is tendered are its name in the body of the instrument and the signature. It was not signed in the corporate name. The signer Bryson described himself to be a "former secretary." In an accompanying letter he disclaims authority to act for the corporation. The wording of the document contains no agreement on the part of Bryson individually.

The Commissioner insists, and we hold, that the corporation was then in existence. If it had no officers a court of equity could have provided them and the contract of waiver could have been executed on its behalf. Had the Commissioner of Internal Revenue sought a waiver of the statute of limitations by Bryson individually, it would have been simple enough to make plain that intention without varying from the general form of "Income and Profits Tax Waiver" which has been in customary use in the Internal Revenue Department since the Revenue Act of 1921 (42 Stat. 227), and which was the form utilized in the instant case. Bryson might have been named in the body of the instrument as "transferee." A description of him there as "taxpayer" would have been amply sufficient. It is a persuasive factor negativing the Commissioner's intent to hold Bryson personally, that instead of taking such elementary steps to cause the waiver to speak thus clearly, he affixed his sig-

nature to a document which on its face bound no one, and from which can be read a transferee liability only by an ultra refined metaphysical construction animated by a strong presumption in favor of the government and against the taxpayer. In addition to the proper presumption which is against the government it may be said that if there were doubt as to the interpretation of the terms of the writing, that doubt certainly should not be resolved with any presumption in favor of the party furnishing the printed form. Commissioner v. Leasing & Building Co. (C. C. A.) 46 F.(2d) 2, 4.

It is claimed that an examination of the record in the case of Helvering v. Newport Co., 291 U. S. 485, 54 S. Ct. 480, 78 L. Ed. 929, shows that the Supreme Court, in effect, has held that where the former corporation *is actually nonexistent* and a successor corporation signs the defunct corporation's name followed by its own, as successor, on a similar printed document furnished by the Commissioner, the document will bind the successor. By what reasoning this result is attained does not appear in the opinion, but it is assumed it is that, there being no corporation in existence, by declaring itself a successor, the instrument places the successor in the shoes of its acknowledged predecessor. The Circuit Court of Appeals' decision, 65 F.(2d) 925, which the Supreme Court reverses, bases its opinion on the nonexistence of the predecessor company and hence impossibility of the successor company executing the contract contained in the printed form.

The facts here are different. In the claimed waiver in the present case (1) the company purporting to contract exists and is capable of executing a waiver, but (2) does not sign at all. (3) The description of the signer "former secretary" precludes a construction that the existing corporation is executing it. (4) The accompanying candid letter to the Commissioner negatives an intent or authority to sign on behalf of the corporation. Its erroneous statement that under the Washington law the corporation is nonexistent cannot be held to have deceived the Commissioner and created an estoppel to assert the continued existence of the corporation. The statement was a mere legal conclusion. It in no wise prejudiced the Commissioner, who does not claim estoppel, and who has chosen to urge the continued corporate existence. This cannot be an estoppel in pais. Union Mut. Life Ins. Co. v. Mowry, 96 U. S. 544, 547, 548, 24 L. Ed. 674. I know of no doctrine of estoppel to deny that a written instrument is something other than what its terms necessarily import, except as based on some fraud or misrepresentation. None is shown here.

I cannot believe that the Supreme Court intends to hold that the language of the taxing statute is to be construed to mean that the transferee of the assets of the corporation is the agent of the transferring corporation to execute instruments in its behalf. There is nothing in the statute which intimates that such was the intent of the Congress. Only by construing it strongly against the taxpayer is such a result possible. Such a construction violates the rule of all the decisions of the Supreme Court beginning with United States v. Isham, 17 Wall. 496, 504, 21 L. Ed. 728, and last stated in Miller v. Standard Nut Margarine Co., 284 U. S. 498, 508, 52 S. Ct. 260, 76 L. Ed. 422, to the effect that tax statutes must be construed liberally in favor of the taxpayer. If it were so construed adversely to the taxpayer, the ruling would not apply, since the corporation's name is not signed and the proofs show that Bryson disclaimed acting as its agent.

WILBUR, Circuit Judge (dissenting).

I dissent from the opinion of the majority in so far as it holds that Bryson's tax liability for the years 1917 and 1918 was barred by the statute of limitations. The decision of the Board of Tax Appeals to that effect was based upon the theory that if the tax was barred as to the corporation a waiver of the transferee would not toll the statute as to his obligation. In so holding, the Board follows its decision in Newport Co. v. Commissioner of Internal Revenue, Helvering, 22 B. T. A. 833; that decision was affirmed by the Circuit Court of Appeals for the Seventh Circuit, 65 F.(2d) 925, but reversed by the Supreme Court, 291 U. S. 485, 54 S. Ct. 480, 78 L. Ed. 929. It was thus settled that a waiver by the transferee will toll the statute as to him. The Board of Tax Appeals held that the petitioner, Elmer D. Bryson, was the transferee of the corporation, and upon that basis held him liable as transferee of the assets of the corporation for its

404

deficiency for 1919. In sustaining that decision we are following the conclusion of the Board of Tax Appeals that Bryson was the transferee of the Bryson-Robison Corporation. There are certain facts upon this question of whether or not Bryson was transferee of the corporation within the meaning of section 280 of the Revenue Act 1926 (26 USCA § 1069 and note), which are not stated in the main opinion. In his petition to the Board of Tax Appeals Bryson states: "The Commissioner erred in determining petitioner to be a transferee of one-half the assets of the corporation of Bryson-Robison Corporation on dissolution thereof as petitioner purchased of and from Lester L. Robison *and said corporation* certain assets, being all of the assets, of said corporation as an independent, outright purchase." Again he states: "The petitioner purchased assets of the corporation from Lester L. Robison *and the corporation,* not as a stockholder, but as an independent purchaser paying his own money therefor." The Board of Tax Appeals, in its opinion, on this subject said: "But the action of Bryson taking over all the assets of the corporation and assuming all of its liabilities, makes him a transferee of the assets of such corporation and liable as such. J. W. Oglesby v. Commissioner of Internal Revenue, 16 B. T. A. 1191; Frank Shlaudeman v. Commissioner of Internal Revenue, 21 B. T. A. 605; John Gerosa et al. v. Commissioner of Internal Revenue, 21 B. T. A. 1234."

It appears from the evidence that on June 4, 1919, the corporation transferred all its real property to Bryson. It appears from the testimony of the attorney who handled the transaction that Lester L. Robison and wife joined in the transfer because the record title of some of this property was in Lester L. Robison, although the actual ownership was in the corporation. This attorney testified as follows: "The deed was given by the corporation and Lester L. Robison and wife to Elmer D. Bryson, conveying all of the corporate real estate, and there was the transfer of all of the personal property of the corporation to Elmer D. Bryson." He further testified that the occasion for transferring the corporate stock when the corporation was dissolved was so that any assets in the corporation instead of being distributed to Mr. Robison were to be distributed to Mr. Bryson pursuant to his purchase.

The brief filed by Elmer D. Bryson and Lester L. Robison before the Board of Tax Appeals shows that the contention of Bryson before the Board was that although he was a transferee of all the assets of the corporation, he was not a transferee within the meaning of section 280 of the Revenue Act of 1926, for the reason that he had paid full value for the assets received by him from the corporation. He made the same contention in his petition for cross appeal to this court, stating: "The Board erred in holding that Elmer D. Bryson, respondent, is a transferee of the assets of the Bryson-Robison Corporation, and that he was other than a purchaser thereof for full value *from said corporation.*"

The reason I have quoted these statements is because in the main opinion there is an inference that there was no transfer from the corporation to Bryson, but that he merely took possession of the assets of the corporation. The record discloses that this is not the case. The record discloses that the agreement between Robison and Bryson and the corporation was that Bryson should pay $70,000 for the half interest owned by Robison to be secured by a mortgage upon the real estate to be conveyed by the corporation to Bryson and that Bryson agreed to pay all the liabilities and obligations of the corporation. It is true there is no direct statement that Bryson agreed to pay the liabilities of the corporation, but he testified that he did pay such liabilities. I quote his testimony in that regard as follows: "At the time I bought out the corporation from Mr. Robison there were obligations of the corporation which I later on liquidated in addition to the $70,000. Roughly—for my memory is poor —I know there were notes at the bank and they had some store bills and we had accounts that had to be settled. I could not give them—only roughly—. I am not sure but I think I owed the bank $17,000 or $18,000. I had a current merchandise account and some of the herders' wages were due. * * * When the proceeds [from the sale of the wool] came Mr. Robison turned over his profits to me and this money was used to pay off the debts." With reference to his making out income tax returns he was asked: "Wasn't it because you felt that you were the sole person that was responsible, if anybody was responsible, for the affairs of the corporation? A. Well, I did set-

tle all bills that were due the corporation. I took over everything and gave him $70,000 for it." Again he testified: "After the transaction between myself and Mr. Robison in June 1919 he ceased to have anything to do with the corporation affairs."

Mr. Robison testified:

"Sometime in June, 1919, I sold out to Mr. Bryson for the sum of $70,000.-00. Mr. Bryson took the assets of the corporation and has been holding them ever since. The corporation had no assets after that time,—the time I sold out to Mr. Bryson and the corporation has no assets now.

"By Mr. McFarland: Q. How about the liabilities of the corporation, were they very much at the time of the transfer of those assets? A. I do not know of any other than just Mr. Bryson gave me, to take care of the liabilities.

"Q. He gave you what? A. He gave me $70,000; he was to take care of what liabilities we had."

The importance of this evidence lies in the fact that if Bryson assumed the obligations of the corporation he must assume the obligation to pay the tax so that his contention that he is not a transferee because he purchased the assets of the corporation for a price is not tenable. In this connection it should be stated that in his petition for cross appeal for review of the order of the Board of Tax Appeals holding him responsible as transferee for the income taxes of the corporation for the year 1919, the petitioner alleges as follows:

"On June 4, 1919 Elmer D. Bryson, respondent, purchased of and from said corporation and Lester L. Robison and wife, all of the assets, real and personal and wherever situated, of said corporation. The properties were appropriately conveyed to respondent for a consideration of $70,000.00, and the payment by respondent of certain outstanding obligations of the corporation. Respondent did not either purchase or acquire the corporate capital stock of Robison, nor did he following June 4, 1919, conduct any business by or in the name of the corporation, on the contrary, from that date forward operated the business as an individual, sole-owner by purchase, thereof. * * *

"The record before the Board is clear and undisputed as to the following facts concerning the income and profit tax liability for 1919;

"This proceeding involves alleged income and profit tax liability of the respondent solely as a transferee of Bryson-Robison Corporation, and not for any personal or other income of the respondent.

"June 4, 1919, respondent acquired by purchase for $70,000.00 all of the assets of Bryson-Robison Corporation, thereafter conducting the business as an individual. The assets were conveyed to respondent by deed and bills of sale executed by the corporation and Lester L. Robison and wife."

From the fact that Bryson claimed he was a transferee of all the assets of the corporation, that the Board of Tax Appeals found he was a transferee of the corporation and for that reason held him liable for taxes for the year 1919, and that we have sustained this conclusion of the Board of Tax Appeals, I assume it is settled that Bryson was the transferee of the corporation and liable as such for the tax of 1919, if there was a waiver which tolled the statute of limitations. In the main opinion the waiver is set out in full and need not be repeated here. It is there held that this is a waiver neither by the corporation nor by the transferee, and this in part because of the disclaimer of authority contained in the letter accompanying the waiver. This letter is quoted in part in the main opinion. It will be observed that in addition to disclaiming authority to act for the corporation, although the corporation was in fact still in existence, and although he was the secretary of the corporation and had previously acted for the corporation in matters of income tax, he disclaimed authority so to do and stated "the only way he could make a report would be as that of an individual who was formerly secretary of the corporation." Of this waiver the Board of Tax Appeals said: " * * * he was not executing it as a former officer of the corporation but merely as an individual who repudiated any claim that he had authority to act for the corporation. * * * The most that could be said for the waiver which we have set out above, is that it was executed by Bryson as a transferee of the assets of the original taxpayer and we have held that a waiver executed by a transferee purporting to

extend the time of assessment and collection of the tax against the original taxpayer, is ineffective to extend the statute of limitations as to the original taxpayer. Carnation Milk Products Co. [v. Commissioner of Internal Revenue], 15 B. T. A. 556."

This latter statement as to the effect of a waiver by a transferee, as we have pointed out, has been decided otherwise by the Supreme Court in Helvering v. Newport Co., 291 U. S. 485, 54 S. Ct. 480, 78 L. Ed. 929. I think the decision of the Supreme Court in that case disposes of the question as to whether or not the waiver here is sufficient to toll the statute of limitations as to the transferee where assigned by the transferee. We have to turn to the record before the Supreme Court and the Board of Tax Appeals in that case to find the exact form of the waiver signed by the Newport Company. It was signed by the Newport Company "as successor of the Chemical Works." The court considered that the objection to this waiver was not worthy of discussion and held the waiver sufficient although it was executed in the name of the Chemical Works and signed by the Newport Company as successor. I am unable to see that the addition of the word "transferee" to the name of the transferee, or of the word "successor" adds anything to the validity or effect of the waiver. It is in fact executed by the transferee. It is his act and no one else's, and should be binding upon him. The decision of the majority is directly contrary to the decision of the Supreme Court in the case cited.